RACHEL E. K. LOWE (State Bar No. 246361)
GILLIAN H. CLOW (State Bar No. 298966)
OMAR MORQUECHO (State Bar No. 333647)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
rachel.lowe@alston.com
gillian.clow@alston.com
omar.morquecho@alston.com

TRACY YAO (State Bar No. 323816)
**ALSTON & BIRD LLP**
55 2nd Street, Suite 2100
San Francisco, CA 94105
Telephone: 415-243-1000
Facsimile: 415-243-1001
tracy.yao@alston.com

Attorneys for Defendant Redfin Corporation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAM CACAS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REDFIN CORPORATION, a Delaware corporation; and DOES 1-100, inclusive<br><br>Defendants. | Case No. 3:26-cv-04566-MMC<br><br>**DEFENDANT REDFIN CORPORATION'S MOTION TO COMPEL ARBITRATION**<br><br>Date: July 31, 2026<br>Time: 9:00 a.m.<br>Courtroom: 7<br><br>Compl. Filed: March 30, 2026 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 31, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Maxine M. Chesney in Courtroom 7 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Redfin Corporation ("Redfin") will and hereby does move to compel the claims of Plaintiff Sam Cacas to individual arbitration and to stay this action pending the outcome of arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*

Redfin moves to compel arbitration because Plaintiff, as a Redfin accountholder, agreed to individual arbitration pursuant to the Redfin Terms of Use. Specifically, the applicable arbitration agreement between Redfin and account holders requires that any dispute, controversy, or claim between Plaintiff and Redfin be resolved solely by binding arbitration. Plaintiff's claims fall squarely within the scope of the arbitration agreement because the claims are between him and Redfin over his use of Redfin's online website. And, any dispute over the arbitrability of Plaintiff's claims is delegated to the arbitrator. Therefore, the Court should stay the action and compel Plaintiff to submit his claims to individual arbitration with the American Arbitration Association.

Dated: June 22, 2026

RACHEL E. K. LOWE
GILLIAN H. CLOW
TRACY YAO
OMAR MORQUECHO
**ALSTON & BIRD LLP**

By: ______________________________
Rachel E. K. Lowe
Attorneys for Defendant Redfin Corporation

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 1
  A. Plaintiff is a Redfin accountholder. ..... 1
  B. All Redfin accountholders, including Plaintiff, agree to Redfin's Terms of Use. ..... 1
  C. Redfin's Terms of Use contain a binding arbitration agreement. ..... 2
  D. In the Complaint, Plaintiff asserts claims arising out of his use of Redfin's website. ..... 3
III. LEGAL STANDARD ..... 4
IV. ARGUMENT ..... 4
  A. Plaintiff entered into a binding arbitration agreement. ..... 4
    1. Redfin's notices are conspicuous. ..... 5
    2. Plaintiff manifested consent by taking affirmative actions. ..... 6
    3. The arbitrator must decide questions of arbitrability. ..... 7
    4. In any event, the arbitration agreement is valid and enforceable. ..... 8
  B. Plaintiff's claims fall within the scope of the arbitration agreement. ..... 10
  C. The Court should stay this action pending arbitration as required under the FAA. ..... 11
V. CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Berman v. Freedfom Fin. Network, LLC*,
30 F.4th 849 (9th Cir. 2022) .................................................. 4, 5

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) .................................................. 7

*Britt v. ContextLogic, Inc.*,
No. 3:20-cv-04333-WHA, 2021 WL 1338553 (N.D. Cal. Apr. 9, 2021).................. 8

*Chin v. Thumbtack Inc.*,
No. 25-CV-05245-JSC, 2026 WL 807276 (N.D. Cal. Mar. 24, 2026).................. 7

*Circuit City Stores, Inc. v. Ahmed*,
283 F.3d 1198 (9th Cir. 2002) .................................................. 9

*Davenport v. NVIDIA Corp.*,
719 F. Supp. 3d 1019 (N.D. Cal. 2024) .................................................. 9

*Dupler v. Orbitz, LLC*,
No. CV 18-2303-RGK, 2018 WL 6038309 (C.D. Cal. July 5, 2018) .................. 11

*First Options of Chi., Inc. v. Kaplan*,
514 U.S. 938 (1995).................................................. 4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019).................................................. 7

*Johnson v. Maker Ecosystem Growth Holdings, Inc.*,
No. 20-CV-02569-MMC, 2020 WL 13836392 (N.D. Cal. Sep. 25, 2020) .................. 8

*Kaplan v. The Athletic Media Co.*,
705 F. Supp. 3d 992 (N.D. Cal. 2023) .................................................. 9

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) .................................................. 4, 5, 6

*Lang v. Skytap, Inc.*,
347 F. Supp. 3d 420 (N.D. Cal. 2018) .................................................. 9

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*,
363 F.3d 1010 (9th Cir. 2004) .................................................. 4

*Marselian v. Wells Fargo & Co.*,
514 F. Supp. 3d 1166 (N.D. Cal. 2021) .................................................. 4

*McLellan v. Fitbit, Inc.*,
No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) .......... 7

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .......... 7

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) .......... 4, 5

*Open Book Theatre Co. v. Brown Paper Tickets, LLC*,
749 F. Supp. 3d 1076 (S.D. Cal. 2024) .......... 6

*Poublon v. C.H. Robinson Co.*,
846 F.3d 1251 (9th Cir. 2017) .......... 8

*Shroyer v. New Cingular Wireless Servs., Inc.*,
498 F.3d 976 (9th Cir. 2007) .......... 8, 10

*Smith v. Spizzirri*,
601 U.S. 472 (2024) .......... 11

*Wiseley v. Amazon.com, Inc.*,
709 F. App'x 862 (9th Cir. 2017) .......... 9

**STATE CASES**

*B.D. v. Blizzard Ent., Inc.*,
76 Cal. App. 5th 931 (2022) .......... 6

*Engalla v. Permanente Med. Grp., Inc.*,
15 Cal. 4th 951 (1997) .......... 8

*Graham v. Scissor-Tail, Inc.*,
28 Cal. 3d 807 (1981) .......... 9

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
55 Cal. 4th 223 (2012) .......... 4, 8, 9

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .......... 5, 6

*Thomas v. Westlake*,
204 Cal. App. 4th 605 (2012) .......... 11

*Trend Homes, Inc. v. Super. Ct.*,
131 Cal. App. 4th 950 (2005) .......... 10

## CIVIL L.R. 7-4(A)(3) STATEMENT OF ISSUES TO BE DECIDED

This motion raises the following issues:

1. Whether Plaintiff should be compelled to submit his claims asserted in the Complaint against Redfin to individual arbitration with the American Arbitration Association pursuant to the arbitration agreement in the Terms of Use that Plaintiff agreed to when he signed up for a Redfin account.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As a Redfin account holder, Plaintiff Sam Cacas agreed to arbitrate his disputes with Redfin and also waived any ability to participate in a class action. Notwithstanding his contractual obligation to resolve disputes through individual arbitration, rather than in court, Plaintiff filed this putative class action. But Plaintiff cannot so easily avoid his agreement to arbitrate. The Federal Arbitration Act ("FAA") requires enforcement of the arbitration agreement.

Plaintiff's arbitration agreement with Redfin is broad, extending to any claim between him and Redfin. The claims Plaintiff attempts to assert in this litigation all fall squarely within the scope of the arbitration agreement. Consequently, those claims have no place in this Court, and Plaintiff should be held to his agreement to arbitrate. Accordingly, Redfin respectfully requests that this Court grant this Motion and compel Plaintiff to submit his claims to individual arbitration.

## II. FACTUAL BACKGROUND

### A. Plaintiff is a Redfin accountholder.

Plaintiff alleges that he was a resident of Oakland, California, when he visited redfin.com (the "Website") in or around March 2026 to look at a property listing. (Compl. ¶¶ 6, 90.) Plaintiff has a Redfin account. Redfin has a record of an account for Sam Cacas in the Oakland area. (Declaration of Eugenia Nemenman ¶ 12.) It was registered with the name "S Cacas," has "sam" in the associated email username, has a phone number with a 415 area code, and was created on September 14, 2025. (*Id.*)

### B. All Redfin accountholders, including Plaintiff, agree to Redfin's Terms of Use.

All Redfin accountholders, like Plaintiff, have affirmatively consented to Redfin's Terms of Use and the included arbitration agreement at least once, if not repeatedly. First, Redfin accountholders consent to the Terms of Use at the time of account creation. Clicking the "Join / Sign In" button on redfin.com leads to the pop-up shown in Figure 1 below. (Nemenman Decl. ¶¶ 7-9.)




(Nemenman Decl. ¶ 8, Figure 3.) The pop-up conspicuously informs website visitors that "[b]y signing in you agree to Redfin's **Terms of Use** and **Privacy Policy**" and provides a bolded hyperlink to the Terms of Use. (*Id.* ¶ 8, Figure 3.). To create a Redfin account, Plaintiff would have entered an email address and clicked "Continue with Email" or selected one of the options to continue with Google or Apple. Regardless of the method selected, the pop-up is clear that clicking any of the "Continue with" buttons constitutes assent to the Terms of Use.

Second, accountholders also affirmatively consent to the Terms of Use each time they sign in to their account. As illustrated in Figure 1, the pop-up for signing into an existing account is the same as for creating a new account. (Nemenman Decl. ¶ 10.) Redfin's records reflect account activity for the account associated with "S Cacas" on at least September 15, 2025, the day after account creation. (*Id.* ¶ 13.)

**C. Redfin's Terms of Use contain a binding arbitration agreement.**

Redfin's Terms of Use in place on September 14 and 15, 2025, when Plaintiff created and then logged into his account, contain a binding arbitration agreement. (Nemenman Decl. ¶ 3, Ex. A ("March 2025 TOUs") at 15-17.)[1] The Terms of Use dated March 5, 2025, were in effect at the time Plaintiff created his account on September 14, 2025. (*See id.* ¶ 3.)

[1] For this motion, page numbers were added to Exhibit A of the Nemenman Declaration for ease of reference.

The Terms of Use agreed to by Plaintiff conspicuously highlight the arbitration agreement at the outset:

> **PLEASE NOTE: WHERE PERMITTED BY APPLICABLE LAW, WHEN YOU AGREE TO THIS AGREEMENT AND THESE TERMS YOU ARE AGREEING (WITH LIMITED EXCEPTION) TO RESOLVE ANY CLAIM BETWEEN YOU AND A REDFIN COMPANY THROUGH BINDING, INDIVIDUAL ARBITRATION RATHER THAN IN COURT. PLEASE REVIEW CAREFULLY SECTION 2.13.9 BELOW FOR DETAILS REGARDING ARBITRATION (INCLUDING THE PROCEDURE TO OPT OUT OF ARBITRATION). THIS AGREEMENT ALSO CONTAINS A CLASS ACTION WAIVER.**
>
> **BY ENTERING INTO THIS AGREEMENT, YOU ACKNOWLEDGE THAT YOU UNDERSTAND THIS AGREEMENT AND AGREE TO ALL OF ITS TERMS AND CONDITIONS. IF YOU DO NOT AGREE TO BE BOUND BY THE TERMS AND CONDITIONS OF THIS AGREEMENT, YOU MAY NOT USE OR ACCESS THE SERVICES.**

(Nemenman Decl., Ex. A, March 2025 TOUs at 6-7 (emphasis in original).)

The arbitration agreement itself provides:

> 2.13.9.2. *Binding Arbitration and Class Action Waiver*. Subject to Section 2.13.9.3, you and the Redfin Companies agree that any Claim between you and any Redfin Company or Redfin Companies will be resolved **solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding.** This Section 2.13.9 is governed, in all respects, both procedurally and substantively, by the United States Federal Arbitration Act. You and the applicable Redfin Companies agree that you are each waiving the right to a trial by jury or to participate in a class action.

(Nemenman Decl., Ex. A, March 2025 TOUs at 16 (emphasis in original).) Under the Terms of Use, Redfin accountholders have an opportunity to opt out of the arbitration agreement within thirty days "following the date [they] first agree to this Agreement" by either mailing or e-mailing Redfin. (*Id.* at 17.) Plaintiff did not exercise his right to opt out of arbitration. (Nemenman Decl. ¶ 14.)

### D. In the Complaint, Plaintiff asserts claims arising out of his use of Redfin's website.

Plaintiff alleges that he visited redfin.com in March 2026, after he created his account, to look at property listings. (Compl. ¶ 90.) Redfin allegedly used various tracking technologies to collect his personal and browsing information, which was shared with third parties without consent. (*Id.* ¶¶ 90-97.) Based on this alleged conduct, Plaintiff asserts claims for invasion of privacy under the California

Constitution and violations of the California Invasion of Privacy Act ("CIPA), the federal Wiretap Act, the California Computer Data Access and Fraud Act ("CDAFA"), and the California Unfair Competition Law ("UCL"). (*Id.* ¶¶ 107-68.)

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement. 9 U.S.C. § 3. The FAA limits the court's role to "determining whether a valid arbitration agreement exists and, if so, whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004).

In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest mutual assent." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-13 (9th Cir. 2023).

## IV. ARGUMENT

### A. Plaintiff entered into a binding arbitration agreement.

To compel arbitration, Redfin must simply demonstrate "the existence of an agreement to arbitrate by a preponderance of the evidence." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) (citation omitted). "Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). "Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* at 856. Indeed, a party may accept a binding arbitration agreement "even if the party never actually read the clause." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012); *see also Marselian v. Wells Fargo & Co.*, 514 F. Supp. 3d 1166, 1173 (N.D. Cal. 2021) ("[I]n the absence of any alleged fraud, overreaching, or excusable neglect, Plaintiff is deemed to have assented to all of the agreement's terms, whether or not he actually understood or even read them.").

Clickwrap agreements are a "form of internet contract formation," and "[c]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract." *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471 (2021) (citation omitted). Courts find an enforceable clickwrap agreement through "inquiry notice if '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Keebaugh*, 100 F.4th at 1018-19 (quoting *Berman*, 30 F.4th at 856). Both elements are present here. Plaintiff agreed multiple times to arbitrate with Redfin—at account creation and at subsequent account logins—by affirmatively clicking certain buttons after being advised that such conduct constituted assent to Redfin's Terms of Use. *See Oberstein*, 60 F.4th at 515 (affirming consent to arbitration agreement where users were presented with a notice multiple times in the sign up process). As Plaintiff and Redfin formed a binding arbitration agreement, the Court should compel arbitration.

**1. <u>Redfin's notices are conspicuous</u>.**

In assessing the first element of conspicuous notice, courts consider both the placement of the notice and the context of the transaction. *Keebaugh*, 100 F.4th at 1018-19; *Oberstein*, 60 F.4th at 516. In particular, considerations include whether the notice is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Berman*, 30 F.4th at 856. The text of the terms of use need not be fully displayed; a website owner may offer notices that make terms of use accessible through a hyperlink that is "readily apparent." *Keebaugh*, 100 F.4th at 1014 (quoting *Berman*, 30 F.4th at 857).

Redfin presents multiple clear notices informing users that the act of creating or using a Redfin account manifests consent to Redfin's Terms of Use. When clicking on the "Join / Sign in" button on redfin.com to either create or log into an account, the user is shown a separate pop-up window, and the contents of the rest of the webpage are inaccessible while the pop-up is open. (Nemenman Decl. ¶ 8, Figure 3; *id.* ¶ 10.) Immediately beneath the buttons with different options for continuing (i.e., via email, Google, or Apple), there is a conspicuous statement in black font against a white background advising that, "[b]y signing in you agree to Redfin's Terms of Use and

Privacy Policy," with the Terms of Use accessible through a contrasting blue hyperlink. (*Id.* ¶ 8, Figure 3.) *See Keebaugh*, 100 F.4th at 1020-21 (finding clear visual placement of notice on sign-in screen where it was displayed directly below the action button in contrasting font on an uncluttered screen).

The "context of the transaction" also supports that the notices are sufficiently conspicuous. Where the "circumstances involve a consumer signing up for an *ongoing* account . . . , it is reasonable to expect that the typical consumer in that type of transaction contemplates entering into a continuing, forward-looking relationship governed by terms and conditions." *B.D. v. Blizzard Ent., Inc.*, 76 Cal. App. 5th 931, 951 (2022). Here, a user establishing a free account with Redfin anticipates a continuous relationship. Redfin is an online search platform that helps people buy, sell, and rent homes, offering information and tools throughout this multi-staged process. (Nemenman Decl. ¶ 2.) For example, a potential buyer can browse available homes over time, connect with an agent, and even get assistance with financing through Redfin's website. (*Id.*) *See Open Book Theatre Co. v. Brown Paper Tickets, LLC*, 749 F. Supp. 3d 1076, 1083 (S.D. Cal. 2024) (finding that transactional context supported that notice was reasonably conspicuous where there was no time limit imposed on how long the user could access the website's services); *cf. Sellers*, 73 Cal. App. 5th at 447 (reasoning that users who "submitted a single question for a 'trial' and a one-time fee" "did not anticipate that they would enter into an ongoing relationship governed by extensive contractual terms").

In sum, Redfin's notices are conspicuous and put reasonable users on notice that they are agreeing to be bound by the Terms of Use.

**2. <u>Plaintiff manifested consent by taking affirmative actions</u>.**

Plaintiff manifested assent to the Terms of Use in multiple ways:

**Assent by Account Sign-Up.** Redfin users agree to the Terms of Use when submitting their email addresses, like Plaintiff, or initiating the account creation process through another platform, such as Google or Apple. (Nemenman Decl. ¶¶ 8-9.) As described above, the account sign-up process begins with a pop-up window that states: "By signing in, you agree to Redfin's Terms of Use and Privacy Policy," which are accessible through a bold hyperlink. (*Id.* ¶ 9.) By clicking the button to create an account, users like Plaintiff consent to the Terms of Use, forming an enforceable sign-in

wrap agreement. *See, e.g.*, *Chin v. Thumbtack Inc.*, No. 25-CV-05245-JSC, 2026 WL 807276, at *7 (N.D. Cal. Mar. 24, 2026) (finding plaintiff manifested assent by clicking button to sign up or create an account, which was located in close proximity to a statement that clicking the action meant agreeing to the terms of use). Plaintiff signed up for a Redfin account on September 14, 2025, and necessarily agreed to Redfin's Terms of Use during that process. (Nemenman Decl. ¶¶ 3, 4, 12.)

**Assent by Account Login.** Redfin users also affirmatively consent to Redfin's Terms of Use each time they sign into their accounts. (Nemenman Decl. ¶¶ 8-10.) The pop-up window described above appears when a user is seeking to either create a new account or log in to an existing one. (*Id.* ¶ 10.) Logging in therefore amounts to formation of another sign-in wrap agreement. Redfin's records demonstrate that, at a minimum, Plaintiff signed into his account on September 15, 2025, and thus accepted the Terms of Use then. (*Id.* ¶ 13.)

**3. <u>The arbitrator must decide questions of arbitrability</u>.**

Redfin has demonstrated that Plaintiff formed an agreement to arbitrate by agreeing to the Terms of Use on multiple occasions. Should the Court find that an arbitration agreement was formed, the Court's inquiry should end there. The arbitration agreement specifically provides that "[t]he parties agree that the arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of this arbitration agreement. (March 2025 TOUs at 18.) This language clearly and unmistakably delegates gateway issues of arbitrability to the arbitrator and must be honored. "When the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract. In those circumstances, a court possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (reversing denial of motion to compel and holding the delegation provisions were clear, unmistakable, and not unconscionable).

In addition, "[i]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *see also McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017) (finding agreement to delegate arbitrability where contract contained

arbitration clause incorporating AAA rules). Here, the arbitration agreement expressly incorporates the AAA's Consumer Arbitration Rules. (March 2025 TOUs at 7, 18.) And those AAA rules state in no uncertain terms that "[t]he arbitrator shall have the power to rule on their own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or the arbitrability of any claim or counterclaim." AAA Consumer Arbitration Rule R-7(a) (2025).

Based on these clear delegations to the arbitrator, and consistent with the FAA's mandate, the Court should compel Plaintiff's claims to individual arbitration. Any argument that Plaintiff may try to present to avoid arbitration must be decided by the arbitrator in the first instance. *See, e.g.*, *.Johnson v. Maker Ecosystem Growth Holdings, Inc.*, No. 20-CV-02569-MMC, 2020 WL 13836392, at *2 (N.D. Cal. Sep. 25, 2020) (granting motion to compel arbitration where agreement incorporated AAA rules because arbitrability was delegated to arbitrator); *Britt v. ContextLogic, Inc.*, No. 3:20-cv-04333-WHA, 2021 WL 1338553, at *6 (N.D. Cal. Apr. 9, 2021) (where there was a delegation clause, "Plaintiff must make her unconscionability arguments to the arbitrator in the first instance.").

**4. <u>In any event, the arbitration agreement is valid and enforceable.</u>**

Even if the Court finds that it may properly address questions of arbitrability, arbitration should be compelled because the agreement is enforceable. Redfin has shown that the parties formed an arbitration agreement, so the burden thus shifts to Plaintiff to prove that the agreement is in some way unenforceable if he wants to avoid arbitration. *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) ("The party opposing arbitration bears the burden of proving any defense, such as unconscionability.") (quoting *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 236).

In the event that Plaintiff challenges the arbitration agreement as unconscionable, he must demonstrate both procedural and substantive unconscionability. *See Engalla v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 972 (1997); *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007) ("[A] contract provision is unenforceable due to unconscionability only if it is *both* procedurally and substantively unconscionable.") (emphasis added). Neither can be shown here.

***a) The arbitration agreement is not procedurally unconscionable.***

Plaintiff cannot establish procedural unconscionability. In general, the procedural unconscionability inquiry focuses on "oppression or surprise due to unequal bargaining power."

*Davenport v. NVIDIA Corp.*, 719 F. Supp. 3d 1019, 1028 (N.D. Cal. 2024) (quoting *Pinnacle Museum Tower Ass'n*, 55 Cal. 4th at 246-47.

There was no oppression here. "Oppression occurs where a contract involves lack of negotiation and meaningful choice." *Davenport*, 719 F. Supp. 3d at 1028-29. The agreement between Redfin and Plaintiff is not a contract of adhesion because Plaintiff did not lack a meaningful choice.[2] *See Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 427 (N.D. Cal. 2018). Plaintiff did not have to enter the Arbitration Agreement—he had the opportunity to opt out but chose not to do so. (March 2025 TOUs at 17; Nemenman Decl. ¶ 14.) The ability to opt-out precludes a finding of oppression. *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199-1200 (9th Cir. 2002) (affirming order compelling arbitration when plaintiff "fail[ed] to satisfy even the procedural unconscionability prong," as he "was not presented with a contract of adhesion because he was given the opportunity to opt-out of the Circuit City arbitration program by mailing in a simple one-page form"); *Kaplan v. The Athletic Media Co*., 705 F. Supp. 3d 992, 1005 (N.D. Cal. 2023) (finding no procedural unconscionability where the arbitration agreement allowed individuals to opt out by mail within thirty days). Even more fundamentally, Plaintiff easily could have chosen a different website to browse properties or explore brokerage services, but he ultimately decided to agree to Redfin's Terms of Use by creating a Redfin account.

Nor is there surprise, which exists when the "allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle*, 55 Cal. 4th at 247. In all capital and bold letters, the Redfin Terms of Use state in the prefatory paragraphs: "**PLEASE NOTE: WHERE PERMITTED BY APPLICABLE LAW, WHEN YOU AGREE TO THIS AGREEMENT AND THESE TERMS YOU ARE AGREEING (WITH LIMITED EXCEPTION) TO RESOLVE ANY CLAIM BETWEEN YOU AND A REDFIN COMPANY THROUGH BINDING, INDIVIDUAL ARBITRATION RATHER THAN IN COURT. PLEASE REVIEW CAREFULLY SECTION**

[2] Even if Plaintiff could establish that his arbitration agreement is a contract of adhesion, such a finding "creates only a minimal degree" of procedural unconscionability under California law. *See Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863-64 (9th Cir. 2017). Even a contract of adhesion "is fully enforceable according to its terms . . . unless certain other factors are present which, under established legal rules – legislative or judicial – operate to render it otherwise." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819-20 (1981) (citations and footnote omitted).

**2.13.9 BELOW FOR DETAILS REGARDING ARBITRATION (INCLUDING THE PROCEDURE TO OPT OUT OF ARBITRATION).**" (Nemenman Decl, March 2025 TOUs at 6-7.) The arbitration agreement itself explains in bold, "you and the Redfin Companies agree that any Claim between you and any Redfin Company or Redfin Companies will be resolved **solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding.**" (March 2025 TOUs at 16.) Under these circumstances, Plaintiff cannot claim surprise. *See Pinnacle*, 55 Cal. 4th at 247 n.12 (finding no surprise when arbitration agreement appeared in a "separate article" with "bold" and "capitalized" title and specific language appeared in "bold and capital letters"); *Trend Homes, Inc. v. Super. Ct.*, 131 Cal. App. 4th 950, 959 (2005), *overruled in part on other grounds by Tarrant Bell Prop., LLC v. Super. Ct.*, 51 Cal. 4th 538, 545 (2011) ("There also is no element of surprise, since the provision is clearly written, entirely capitalized, and easily understood.").

***b) The arbitration agreement is not substantively unconscionable.***

Because Plaintiff cannot establish procedural unconscionability in light of the right to opt out, the Court need not consider any claim he may make as to substantive unconscionability. *Shroyer*, 498 F.3d at 981 ("[A] contract provision is unenforceable due to unconscionability only if it is *both* procedurally and substantively unconscionable.") (emphasis added). In any event, Plaintiff would not be able to show substantive unconscionability, which requires that the arbitration agreement be so "one-sided as to 'shock the conscience.'" *Pinnacle*, 55 Cal. 4th at 246. Far from it, the arbitration agreement here is even-handed and fair. It is mutual and applies to claims asserted by either party. (*See* March 2025 TOUs at 16.) The agreement also provides Plaintiff with a quick and cost-effective way to resolve any dispute with Redfin under the AAA's procedures specifically designed for consumer disputes. (*Id.* at 2, 13.). Redfin also agreed, for non-frivolous claims, to reimburse Plaintiff for the AAA's initial filing fee if it exceeds the fee for filing in court. (*Id.* at 13.) The arbitration agreement does not shock the conscience and is clearly not substantively unconscionable.

**B. Plaintiff's claims fall within the scope of the arbitration agreement.**

As explained above, any questions regarding the scope of the agreement are delegated by the parties to the arbitrator. In any event, the arbitration agreement encompasses the claims asserted in

the Complaint. The arbitration agreement is broad and covers "any Claim between [Plaintiff] and any Redfin Company." (March 2025 TOUs at 16.) "Claim" is defined as "any dispute, controversy or claim arising between [the accountholder] and a Redfin Company." (*Id.* at 7.) *Dupler v. Orbitz, LLC*, No. CV 18-2303-RGK (GSJx), 2018 WL 6038309, at *3 (C.D. Cal. July 5, 2018) (holding that language requiring arbitration of "[a]ny and all Claims . . . relating in any way to the Services [provided by Defendants]" is "very broad, and thus creates a strong presumption of arbitrability"). Plaintiff's claims against Redfin, which are based entirely on his use of Redfin's website (Compl. ¶¶ 90-97), fall squarely within the scope of the arbitration agreement and must be arbitrated.

**C. The Court should stay this action pending arbitration as required under the FAA.**

The arbitration agreement is governed by the FAA. (Nemenman Decl., Ex. A, March 2025 TOUs at 18.) Because Plaintiff is bound to arbitrate his claims, the FAA requires that the Court stay this action pending resolution of the arbitration. *See* 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . the court in which such suit is pending, upon being satisfied that the issue involved . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had[.]"); *see also Thomas v. Westlake*, 204 Cal. App. 4th 605, 620 (2012) ("Thus, since the trial court must order arbitration of all of [the] claims against defendants, it must also stay proceedings on the claims until completion of arbitration."); *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding.").

/////

## V. CONCLUSION

Based on the foregoing, the Court should grant this motion, compel arbitration of Plaintiff's claims and stay this case pending arbitration.

Dated: June 22, 2026

RACHEL E. K. LOWE
GILLIAN H. CLOW
TRACY YAO
OMAR MORQUECHO
Alston & Bird LLP

By: ______________________
Rachel E. K. Lowe
Attorneys for Defendant Redfin Corporation