RACHEL E. K. LOWE (State Bar No. 246361)
GILLIAN H. CLOW (State Bar No. 298966)
OMAR MORQUECHO (State Bar No. 333647)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
rachel.lowe@alston.com
gillian.clow@alston.com
omar.morquecho@alston.com

TRACY YAO (State Bar No. 323816)
**ALSTON & BIRD LLP**
55 2nd Street, Suite 2100
San Francisco, CA 94105
Telephone: 415-243-1000
Facsimile: 415-243-1001
tracy.yao@alston.com

Attorneys for Defendant Redfin Corporation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAM CACAS, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>REDFIN CORPORATION, a Delaware corporation; and DOES 1-100, inclusive<br><br>Defendants. | Case No. 3:26-cv-04566-MMC<br><br>(Removed from Alameda Superior Court Case No. 26CV179566)<br><br>**DEFENDANT REDFIN CORPORATION'S MOTION TO DISMISS**<br><br>Date: July 31, 2026<br>Time: 9:00 a.m.<br>Dept.: Courtroom 7<br><br>Compl. Filed: March 30, 2026 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on July 31, 2026, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Honorable Maxine M. Chesney in Courtroom 7 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Redfin Corporation will and hereby does move pursuant to Rules 12(b)(6), 8 and 9(b) of the Federal Rules of Civil Procedure for an order dismissing Plaintiff Sam Cacas's Class Complaint (the "Complaint").

As grounds for this Motion, Redfin will show:

*First*, this action should be dismissed or stayed pursuant to the first-to-file rule given a prior-filed action in the Central District of California.

*Second*, Plaintiff's entire Complaint fails to satisfy Rule 8.

*Third*, Plaintiff consented to the Redfin Terms of Use and Privacy Policy in September 2025, before his supposed March 2026 website visit at issue in the Complaint.

*Fourth*, Plaintiff fails to state his claims for: (1) violation of the wiretapping and pen register/trap and trace ("PR/TT") provisions of the California Invasion of Privacy Act ("CIPA"), Cal. Penal Code §§ 631, 638.51; (2) violation of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2510; (3) violation of the California Computer Data Access and Fraud Act ("CDAFA"), Cal. Penal Code § 502; (4) invasion of privacy under the California Constitution; and (5) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200.

Concurrently with this Motion to Dismiss, Redfin files a Motion to Compel Arbitration. Redfin files both motions at the same time because, while Plaintiff's arbitration agreement should be enforced, his claims are so fundamentally flawed that they cannot survive regardless of the venue. Whether this Court grants this Motion or grants the Motion to Compel Arbitration, the result would be the same – an end to this lawsuit in its entirety. In the event the Court does not grant Redfin's concurrently filed Motion to Compel Arbitration, the Court should dismiss the Complaint for any or all of the reasons in this Motion.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the supporting Declaration of Eugenia Nemenman, the pleadings and records on file in this action, and such other evidence and argument as may be presented to the Court at or before the hearing on the Motion.

Dated: June 22, 2026

RACHEL E. K. LOWE
GILLIAN H. CLOW
TRACY YAO
OMAR MORQUECHO
**ALSTON & BIRD LLP**

By: ______________________
Rachel E. K. Lowe
Attorneys for Defendant Redfin Corporation

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .......... 1
II. BACKGROUND .......... 1
A. Redfin's Website, Privacy Policy, and Account Creation .......... 1
B. Plaintiff's Redfin Account and Consent to Privacy Policy .......... 3
C. Plaintiff's Alleged Website Interaction and Asserted Claims .......... 3
D. The First-Filed *Esparza* Action .......... 4
III. LEGAL STANDARD .......... 4
IV. ARGUMENT .......... 5
A. The Court should dismiss this action pursuant to the "first-to-file" rule. .......... 5
1. Chronology of lawsuits. .......... 5
2. Similarity of parties. .......... 5
3. Similarity of the issues. .......... 6
B. Alternatively, the Court should dismiss the Complaint for failure to state a claim. .......... 7
1. The Complaint fails to meet the pleading standards under Rule 8(a). .......... 7
2. Consent bars all of Plaintiff's claims. .......... 8
3. Plaintiff fails to allege a violation of CIPA. .......... 9
4. Plaintiff fails to allege a violation of ECPA. .......... 16
5. Plaintiff fails to allege a violation of CDAFA. .......... 18
6. Plaintiff fails to allege a claim for invasion of privacy. .......... 19
7. Plaintiff fails to allege a violation of the UCL. .......... 20
8. Dismissal should be without leave to amend. .......... 23
V. CONCLUSION .......... 23

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274 (C.D. Cal. 2024) .... 21

*Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622 (9th Cir. 1991) .... 5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... 4, 7

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024), *recons. granted in part*, No. EDCV 23-2092 .... 21

*Bates-Ferreira v. Swedish Match N. Am., LLC*, No. 2:24-CV-00987-TLN-CKD, 2025 WL 950506 (E.D. Cal. Mar. 28, 2025) .... 6

*Bell Atl. Corp v. Twombly*, 550 U.S. 544 (2007) .... 4

*Bowles v. Leprino Foods Co.*, No. 1:19-CV-00635-AWI-BAM, 2020 WL 3256845 (E.D. Cal. June 16, 2020) .... 5

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051 (C.D. Cal. 2023) .... 8

*Chin v. Thumbtack Inc.*, No. 25-CV-05245-JSC, 2026 WL 807276 (N.D. Cal. Mar. 24, 2026) .... 9

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) .... 13, 14

*Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461 (N.D. Cal. 2021) .... 19

*Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117 (S.D. Cal. 2023), *vacated and remanded for other grounds*, *Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA-DDL, 2024 U.S. Dist. LEXIS 48697 (S.D. Cal. Mar. 18, 2024) .... 7

*Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152 (9th Cir. 2012) .... 22

*Doe I v. Google LLC*, 2023 WL 6882766 (N.D. Cal. Oct. 18, 2023) .... 16

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......... 11, 13

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 19

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......... 12

*Heiting v. Taro Pharms. USA, Inc.*,
728 F. Supp. 3d 1112 (C.D. Cal. 2024) .......... 13, 15

*In re Apple Data Priv. Litig.*,
No. 5:22-CV-07069-EJD, 2026 WL 146025 (N.D. Cal. Jan. 20, 2026) .......... 15, 16

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) .......... 19

*In re Facebook Internet Tracking Litig*.,
140 F. Supp. 3d 922 (N.D. Cal. 2015) .......... 19

*In re Google, Inc. Privacy Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......... 20, 22

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sep. 20, 2011) .......... 18

*In re USA Today, Co. Internet Tracking Litig.*,
No. 24-cv-05150-MMC, 2026 WL 932655 (N.D. Cal Apr. 6, 2026) .......... 19

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) .......... 16

*Johnson v. Blue Nile, Inc.*,
No. C 20-08183 LB, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021) .......... 12

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 16, 18

*Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
787 F.3d 1237 (9th Cir. 2015) .......... 5, 6

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 13, 18

*Lakes v. Ubisoft, Inc.*,
777 F. Supp. 3d 1047 (N.D. Cal. 2025) .......... 8, 9, 17, 18

*Leocal v. Ashcroft*,
543 U.S. 1 (2004) .......... 10

*Low v. LinkedIn Corp*.,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........ 19

*Mitchener v. Curiositystream, Inc.*,
815 F. Supp. 3d 845 (N.D. Cal. 2025) ........ 16

*Monet v. JPMorgan Chase Bank, N.A.*,
No. 17-CV-00623-LHK, 2017 U.S. Dist. LEXIS 143419 (N.D. Cal. Sep. 5, 2017) ........ 22

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........ 4

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ........ 7

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ........ 9

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
678 F.2d 93 (9th Cir. 1982) ........ 5

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 17

*Popa v. Microsoft Corp*.,
153 F.4th 784 (9th Cir. 2025) ........ 19, 20

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ........ 14

*Sisti v. Bosley Inc*.,
No. 2:25-cv-10669-JFW-DFMx, 2026 WL 1223927 (C.D. Cal. Apr. 27, 2026) ........ 9, 17

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd,* 745 F. App'x 8 (9th Cir. 2018) ........ 8, 9, 13

*Steckman v. Hart Brewing, Inc.*,
143 F.3d 1293 (9th Cir. 1998) ........ 4, 23

*Tanner v. Acushnet Co.*,
No. 8:23-CV-00346-HDV-ADSX, 2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ........ 21

*Thomas v. Papa John's Int'l, Inc.*,
Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039at (9th Cir. June 18, 2025) ........ 20

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 12, 13

*Wallerstein v. Dole Fresh Vegetables, Inc.*,
967 F. Supp. 2d 1289 (N.D. Cal. 2013) ........ 5, 6

*Washington v. Flixbus, Inc.*,
2025 WL 1592961 (S.D. Cal. June 5, 2025) ........ 9

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 12

*Zhang v. Ikea N. Am. Servs., LLC*,
No. 24-cv-01641-MMC, 2026 LX 28285 (N.D. Cal. Jan. 22, 2026) ........ 23

*Zocco v. Nelnet, Inc.*,
No. 25-cv-04470-NW, 2026 WL 242037 (N.D. Cal. Jan. 29, 2026) ........ 17

**STATE CASES**

*Blaker v. NetScout Systems, Inc.*,
No. 25STCV31283 (Cal. Super. Ct. May 27, 2026) ........ 10

*Cacas v. Bid4assets, Inc.*,
No. 26CV179780 (Cal. Super. Ct. Apr. 1, 2026) ........ 8

*Cacas v. X Corp., Inc.*,
No. 26CV180047 (Cal. Super. Ct. Apr. 1, 2026) ........ 8

*Camacho v. DG Premium Brands LLC*,
No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025) ........ 15

*Cammorata v. Sonifi Sols., Inc.*,
2026 Cal. Super. LEXIS 17831 (Cal. Super. Ct. Feb. 18, 2026) ........ 10

*Flanagan v. Flanagan*,
27 Cal. 4th 766 (2002) ........ 9

*Garcia v. Diversified Foodservice Supply, LLC*,
No. 24STCV19784 (June 24, 2025) ........ 11

*Harrott v. County of Kings*,
25 Cal. 4th 1138 (2001) ........ 11

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) ........ 20

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1143 (2003) ........ 23

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011) ........ 21

*People ex rel. Lungren v. Super. Ct.*,
14 Cal. 4th 294 (1996) ........ 11

*People v. Reynoza*,
15 Cal. 5th 982 (2024) ........ 11

*Price v. Headspace, Inc.*,
No. 24STCV19921, 2025 Cal. Super. LEXIS 27951 (Cal. Super. Ct. Apr. 1, 2025)........ 10

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 Cal. Super. LEXIS 710 (Cal. Super. Ct. Jan. 27, 2025)........ 10

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 Cal. Super. LEXIS 85120 (Cal. Super. Ct. Dec. 15, 2025) ........ 10

*Schallert v. Palo Alto Networks*,
No. 25STCV17109, 2026 Cal. Super. LEXIS 24039 (Cal. Super. Ct. Mar. 6, 2026) ........ 10

*Troyk v. Farmers Grp., Inc.*,
171 Cal. App. 4th 1305 (2009) ........ 11

*Veera v. Banana Republic, LLC*,
6 Cal. App. 5th 907 (2016) ........ 20

*Warden v. Kahn*,
99 Cal. App. 3d 805 (1979) ........ 12

**FEDERAL STATUTES**

18 U.S.C. § 2510........ 4

18 U.S.C. § 2511........ 8, 16, 17, 18

Fed. R. Civ. P. 8........ 7

Fed. R. Civ. P. 9........ 22

Fed. R. Civ. P. 12........ 4

**STATE STATUTES**

Cal. Bus. & Prof. Code § 17200, et seq. ........ 4, 20 22

Cal. Civ. Code § 1798.120........ 22

Cal. Penal Code § 631, et seq. ........ 9, 10

Cal. Penal Code § 502........ 4, 8, 18, 19

**CIVIL L.R. 7-4(a)(3) STATEMENT OF ISSUES TO BE DECIDED**

This motion raises the following issues:

1. Whether this action should be dismissed or stayed due to the first-filed *Esparza* Action.

2. Whether the Complaint should be dismissed because Plaintiff failed to satisfy the requirements of Rule 8.

3. Whether the Complaint should be dismissed because Plaintiff's consent to the Redfin Privacy Policy precludes his claims.

4. Whether the Complaint should be dismissed under Rule 12(b)(6) (and Rules 8 and 9(b) where applicable) because Plaintiff fails to state claims for violation of CIPA, ECPA, CDAFA, and the UCL, and for invasion of privacy.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Potter Handy, LLP has filed a plethora of lawsuits against companies that use commonplace website technologies, relying largely on template complaints—modified only minimally from one defendant to the next—to assert violations of the California Invasion of Privacy Act ("CIPA") and other privacy and consumer statutes. This action, brought on behalf of Plaintiff Sam Cacas, is no different. Plaintiff challenges Redfin Corporation's use of third-party website technologies to collect and share user information, yet the Complaint is largely generic and fails to identify what, if any, of his information was disclosed without consent. That failure alone falls short of basic pleading standards, and the Complaint suffers from additional defects that independently require dismissal.

*First*, there is a prior-filed federal action pending in the Central District of California.

*Second*, prior consent defeats each of Plaintiff's claims. Plaintiff consented to Redfin's Privacy Policy, which discloses its privacy and cookie practices, before the challenged website visit.

*Third*, Plaintiff fails to state his claims for violations of CIPA, the Electronic Communications Privacy Act ("ECPA"), the California Computer Data Access and Fraud Act ("CDAFA"), and California's Unfair Competition Law ("UCL"), and invasion of privacy. Some of these statutes have no application to routine use of pixels and cookies on websites, and in any event, Plaintiff fails to plead the required elements of each claim.

Because there are no facts that Plaintiff can allege to overcome his prior consent or cure the identified deficiencies, amendment would be futile. Dismissal should therefore be without leave to amend.[1]

## II. BACKGROUND

### A. Redfin's Website, Privacy Policy, and Account Creation

Redfin owns and operates the website, redfin.com (the "Website"), which is an online real estate platform for residential real estate listings and related services. (Compl. ¶ 63.) Visitors to the

[1] Redfin concurrently filed a separate, companion Motion to Compel Arbitration. Redfin files this Motion subject to and without waiving the Motion to Compel Arbitration and its arbitration rights. Plaintiff's claims fail as a matter of law, however, and the result would be the same in litigation or in arbitration.

Website are immediately presented with a conspicuous banner informing them about the site's use of cookies:

> We [redfin.com] use cookies and similar technologies ("Cookies") to enhance your user experience, conduct analytics, advertise to you or others, and to share information about your use of our site with third-parties. **By using our site, you agree to our use of Cookies to collect and share your information, and to our Terms of Use and Privacy Policy. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising**.

(Declaration of Eugenia Nemenman ("Nemenman Decl.") ¶ 5, Figure 1.) The banner is persistent; users cannot navigate the Website without closing out of the banner. (*Id.* ¶ 6.)

Redfin's Privacy Policy (also referred to as the "Privacy Notice") advises users regarding Redfin's use of cookies and other similar technologies on the Website:

> **Our Services may use site and app Technologies (including cookies, web-beacons, javascripts, software development kids, and other technologies) to collect and share Personal Information about you, your device, and your use of our Services** for any of our business purposes described in this Privacy Policy. These Technologies may include (a) Redfin cookies we put your device's browser to help us keep track of when you were last on the Sites, and what you last searched on the Sites, (b) first- and third-party cookies and Technologies for analytics and experience enhancement, such as comScore and Google, to help us analyze how people are using the Services or personalize your experience, and (c) Technologies from the interest-based and other ad providers described immediately below in Section 2.I.("Targeted and Interest-Based Ad Providers). For information on rights you may have to opt-out of data collection or sharing by such Technologies used on our Services, see Section 3.C. below ("Opting-Out of Technologies and Tracking").

(Nemenman Decl. ¶ 4, Ex. B at 187 (emphasis added).) The Privacy Policy is also incorporated by reference in Redfin's Terms of Use. (*See id.* ¶ 3, Ex. A at 8.)

Redfin accountholders consent to the Terms of Use and the Privacy Policy at the time of account creation and each time they sign in. Clicking the "Join / Sign In" button on redfin.com leads to a pop-up shown in Figure 1 below. (Nemenman Decl. ¶¶ 7-8.) The pop-up conspicuously informs website visitors that "[b]y signing in you agree to Redfin's **Terms of Use** and **Privacy Policy**" and provides a bolded hyperlink to the Privacy Policy. (*Id.* ¶ 8, Figure 3.). To create a Redfin account, a user either enters an email address and clicks "Continue with Email" or selects one of the options to continue with Google or Apple. Regardless of the method selected, the pop-up is clear that clicking any of the "Continue with" buttons constitutes assent to the Privacy Policy.




(Nemenman Decl. ¶ 8, Figure 3.)

**B. Plaintiff's Redfin Account and Consent to Privacy Policy**

Plaintiff alleges that he was a resident of Oakland, California, when he visited redfin.com in or around March 2026 to look at a property listing. (Compl. ¶¶ 6, 90.) Plaintiff has a Redfin account. (Nemenman Decl. ¶ 12.) It was registered with the name "S Cacas," has "sam" in the associated email username, has a phone number with a 415 area code, and was created on September 14, 2025. (*Id.*) Redfin's records also reflect account activity for the account associated with "S Cacas" on September 15, 2025, the day after account creation. (*Id.* ¶ 13.)

**C. Plaintiff's Alleged Website Interaction and Asserted Claims**

The Complaint's allegations about Plaintiff's personal interactions with the Website are sparse. All that is alleged is that he visited the Website in March 2026 "to look at property listing [sic]." (Compl. ¶ 90.) There are no allegations about what webpages Plaintiff allegedly visited or how else he interacted with the Website. Redfin purportedly caused trackers and cookies from Meta, Google, Microsoft, Amazon, The Trade Desk, TikTok, and App Nexus (the "Trackers") to be installed on his browser, which then collected and shared his information about his website interaction with third parties without his consent. (*Id.* ¶¶ 2, 91-94.) The Complaint does not allege what of Plaintiff's

information was allegedly shared without his consent, including only general allegations about what supposedly could be tracked. (*Id.* ¶¶ 38-60.)

Based on this alleged conduct, Plaintiff asserts putative class claims for: (1) violation of the wiretapping and pen register/trap and trace ("PR/TT") provisions of CIPA, Cal. Penal Code §§ 631, 638.51; (2) violation of ECPA, 18 U.S.C. § 2510; (3) violation of CDAFA, Cal. Penal Code § 502; (4) invasion of privacy under the California Constitution; and (5) violation of the UCL, Cal. Bus. & Prof. Code § 17200. (Compl. ¶¶ 107-68.)

### D. <u>The First-Filed *Esparza* Action</u>

Before Plaintiff filed his suit, Miguel Esparza ("Esparza") filed a similar website privacy suit against Redfin in the Los Angeles Superior Court on July 29, 2025. Esparza alleged that Redfin allowed the TikTok Pixel to be installed on redfin.com to "gather detailed information about website visitors" to share them with third parties in violation of CIPA. (Request for Judicial Notice ("RJN"), Ex. 1 ("*Esparza* Compl.") ¶ 6.) Like Plaintiff, Esparza is a California citizen and brings claims on behalf of a putative class of California residents whose browsing information on Redfin's website was allegedly collected and shared via the TikTok Pixel without their consent. (*See id*. ¶¶ 4, 19, 25-33.) Redfin removed Esparza's action to the Central District of California, which is currently pending in Case No. No. 2:25-cv-08339-JC (the "*Esparza* Action"). At this time, the parties are awaiting a ruling on Redfin's motion to dismiss the FAC.

## III. <u>LEGAL STANDARD</u>

Rule 12(b)(6) requires a plaintiff to "state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where "there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," courts must dismiss plaintiffs' claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In dismissing a complaint, courts need not grant leave to amend where, as here, it would be futile. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

## IV. ARGUMENT

### A. The Court should dismiss this action pursuant to the "first-to-file" rule.

The "first-to-file" rule is a "generally recognized doctrine of federal comity that permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982). This rule "allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court." *Alltrade, Inc. v. Uniweld Prods.*, 946 F.2d 622, 623 (9th Cir. 1991).

In determining whether the first-to-file rule applies, courts consider three threshold factors: (1) chronology; (2) similarity of the parties; and (3) similarity of issues. *See Alltrade*, 946 F.2d at 625-26. "The first-to-file rule should be followed by the district court unless there is a rare or extraordinary circumstance[], inequitable conduct, bad faith, or forum shopping." *Bowles v. Leprino Foods Co.*, No. 1:19-CV-00635-AWI-BAM, 2020 WL 3256845, at *2 (E.D. Cal. June 16, 2020) (citation modified). All three factors weigh in favor of applying the rule here.

#### 1. Chronology of lawsuits.

The *Esparza* Action is the first-filed action. Plaintiff filed this action on March 30, 2026, nearly nine months after the *Esparza* action was filed in state court on July 29, 2025.

#### 2. Similarity of parties.

The parties in this matter are substantially similar to those in the *Esparza* Action. The Ninth Circuit has held that "the first-to-file rule does not require exact identity of the parties," "only substantial similarity of parties." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015). When analyzing the first-to-file rule in putative class actions, a court considers the similarity between the classes, not the class representatives. *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1295 (N.D. Cal. 2013). "Courts have held that proposed classes in class action lawsuits are substantially similar where both classes seek to represent at least some of the same individuals." *Id.* at 1296.

Here, Redfin is the sole defendant in both actions, and there is substantial overlap between the putative classes that Plaintiff and Esparza seek to represent. Esparza seeks to represent "[a]ll California citizens who visited [redfin.com] while physically in California and whose personal information was shared with TikTok or other third parties by Defendant without effective and informed prior consent" (Esparza FAC ¶ 28), whereas Plaintiff seeks to represent "[a]ll California residents who accessed [redfin.com] in California and had their identifying information and website behavior data collected by the Trackers [including one from TikTok] without consent . . . ." (Compl ¶ 98.) Thus, the requirement is satisfied because plaintiffs in both actions seek to represent some of the same individuals: California citizens who accessed redfin.com and had their information allegedly collected and shared with via third-party tracking technologies without their consent. Indeed, based on his allegations, Plaintiff falls within the proposed class in the *Esparza* Action. *See Wallerstein*, 967 F. Supp. 2d at 1296 (finding similarity of parties requirement met where "each class representative could become a member of the other lawsuit's nationwide class if that action is certified"). Given this substantial overlap, the fact that Plaintiff seeks to represent a broader nationwide class does not compel a different conclusion. *Bates-Ferreira v. Swedish Match N. Am., LLC*, No. 2:24-CV-00987-TLN-CKD, 2025 WL 950506, at *4 (E.D. Cal. Mar. 28, 2025) ("It is not determinative if one class is broader than the other, as Plaintiff seems to suggest.").

**3. Similarity of the issues.**

For the first-to-file rule to apply, the issues in both cases need not be identical, only substantially similar, which is the case here. *See Kohn L. Grp., Inc.*, 787 F.3d at 1240. "When analyzing whether issues are substantially similar, a court considers if the common facts, taken together, would lead to the same central question between the cases. Even if a plaintiff presents alternative theories compared to another pending action, it does not necessarily prevent the application of the first-to-file rule because common facts may give rise to a central issue between the cases." *Bates-Ferreira*, 2025 WL 950506, at *4 (citation omitted). Here, the core issue in both actions is whether Redfin's alleged use of third-party tracking technologies on its website gives rise to liability for privacy violations. Plaintiff and Esparza both allege that: (1) Redfin allowed tracking technologies

on its website (Compl. ¶ 2; *Esparza* Compl. ¶ 6); (2) these tracking technologies collected and shared personal or detailed information of website users without their consent (Compl. ¶¶ 39-60; *Esparza* Compl. ¶¶ 6-9); and (3) Redfin allegedly violated CIPA based on this conduct.

***

Based on the foregoing, all three factors weigh in favor of applying the first-to-file rule. No extraordinary circumstances warrant an exception to the rule; there is no evidence to suggest that Redfin has engaged in bad faith or is attempting to forum shop. The Court should therefore dismiss this action in light of the pending *Esparza* Action. Alternatively, given the substantial burden and costs Redfin faces in having to litigate the same issues in multiple jurisdictions. Redfin requests that the Court stay this action pending resolution of the *Esparza* Action.

**B. <u>Alternatively, the Court should dismiss the Complaint for failure to state a claim.</u>**

**1. The Complaint fails to meet the pleading standards under Rule 8(a).**

To comply with Rule 8(a) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Plaintiff's asserted claims all turn on his allegation that Redfin tracked and shared his website activity without consent. But the Complaint offers no factual allegations describing Plaintiff's use of the Website or the information disclosed, leaving Plaintiff's claims unsupported and implausible.

Courts have regularly dismissed complaints in website privacy cases with threadbare factual allegations relying primarily on hypothetical scenarios as insufficiently pleaded. *See, e.g.*, *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1123 (S.D. Cal. 2023) ("Plaintiffs' overarching theory of their case, underlying all claims, is that Defendant collected patients' personal and sensitive medical information on Sharp's website and that this information was then improperly shared with Meta without patients' consent. However, Plaintiffs fail to factually explain their personal participation in any of this."), *vacated and remanded for other grounds*, *Cousin v. Sharp Healthcare*, No. 22-cv-2040-MMA-DDL, 2024 U.S. Dist. LEXIS 48697 (S.D. Cal. Mar. 18, 2024); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1083–84 (W.D. Wash. 2024) ("Plaintiff provides no additional factual

information tying her actual activities to the allegations made by the hypothetical purportedly demonstrating disclosure of Private Information.”). The Court should do the same here.

The bulk of the Complaint is allegations describing how the alleged Trackers hypothetically function. (Compl. ¶¶ 38-60.) All that is alleged with respect to Plaintiff's *personal* experience with the Website is a single sentence that “Plaintiff . . . visited the Website in and around March 2026 to look at property listing [sic]” (*id.* ¶ 90). Plaintiff filed two other website privacy lawsuits the same week as this one, indicative of the boilerplate nature of this lawsuit.[2] As one Central District judge cautioned:

> [W]hen the goal is to file as many lawsuits as possible in the least amount of time, it is far easier and cheaper to copy and paste a complaint over and over again, and to write the original template in such a way that hardly anything needs to be swapped out. Sometimes a plaintiff can get away with this, particularly if a defendant is willing to offer a quick cash settlement. But other defendants may not roll over so easily, and raise some fundamental questions, not least: Why is the entire complaint written at such a high level of generality that it could apply word-for-word to the dozens of other businesses this law firm is suing? And surely, whatever one's views on the propriety of copying and pasting from boilerplate pleadings, there is a point at which all reasonable people should agree the practice has gone too far.

*Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1060 (C.D. Cal. 2023) (dismissing CIPA case). The Court should dismiss for Plaintiff's failure to offer factual allegations supporting the Complaint.

**2. Consent bars all of Plaintiff's claims.**

“Consideration of consent is appropriate on a motion to dismiss where lack of consent is an element of the claim.” *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1054 (N.D. Cal. 2025); *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018) (affirming motion to dismiss based on consent). Plaintiff's consent precludes liability for each of the CIPA, ECPA, invasion of privacy, and CDAFA claims at issue. *See* Cal. Penal Code § 631(a) (element of CIPA wiretapping claim is that conduct is “without the consent of all parties”); *id.* at § 638.51(b)(5) (no liability under CIPA PR/TT provision if “consent of the user . . . has been obtained”); *id.* at § 502(c)(1)-(7) (CDAFA liability requires that a person act “without permission”); 18 U.S.C. § 2511 (no liability under ECPA where “prior consent”

[2] Plaintiff filed two other substantive identical complaints against other companies the day after he filed the instant action. *See Cacas v. Bid4assets, Inc.*, No. 26CV179780 (Cal. Super. Ct. Apr. 1, 2026); *Cacas v. X Corp., Inc.*, No. 26CV180047 (Cal. Super. Ct. Apr. 1, 2026). (RJN, Exs. 2 & 3.)

was given). Because there is no predicate actionable conduct, the UCL claim fails too.

As set forth in Sections II.A and II.B above, Plaintiff consented to Redfin's use of the Trackers on multiple occasions: (1) by using the Website after a conspicuous banner disclosed cookie use and stated that such use constitutes agreement to the Redfin Privacy Policy, which detailed Redfin's cookie use; (2) at the time of his account creation, where he agreed to the Privacy Policy again via a sign-in wrap agreement; and (3) each time he logged into the Website. *See, e.g.*, *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (affirming consent to arbitration agreement where users were presented with a notice multiple times in the sign up process); *Chin v. Thumbtack Inc.*, No. 25-CV-05245-JSC, 2026 WL 807276, at *7 (N.D. Cal. Mar. 24, 2026) (finding plaintiff manifested assent by clicking button to sign up or create an account, which was located in close proximity to a statement that clicking the action meant agreeing to the terms of use). Given Redfin's conspicuous disclosure of its cookie use and Privacy Policy and Plaintiff's valid consent thereto, the Complaint should be dismissed. *See, e.g., Sisti v. Bosley Inc.*, No. 2:25-cv-10669-JFW-DFMx, 2026 WL 1223927, at *6-7 (C.D. Cal. Apr. 27, 2026) (dismissing CIPA, ECPA, and other privacy claims based on consent to data disclosure policies via sign-in wrap agreement); *Washington v. Flixbus, Inc.*, 2025 WL 1592961, at *5 (S.D. Cal. June 5, 2025) (same); *Lakes*, 777 F. Supp. 3d at 1054; *Smith*, 745 F. App'x at 8-9.

**3. Plaintiff fails to allege a violation of CIPA.**

Plaintiff alleges that Redfin violated two different provisions of CIPA: (1) the wiretapping provision under Cal. Penal Code § 631(a) ("Section 631(a)"); and (2) the PR/TT provision under Cal. Penal Code § 638.51 ("Section 638.51"). The Complaint fails to state a claim for violation of CIPA under either theory for a number of independent reasons, each of which is sufficient to dismiss.

***a) CIPA does not apply to internet communications.***

CIPA is a privacy statute that was passed in 1967 with telephone wiretapping in mind, well before the widespread use of the internet. *See Flanagan v. Flanagan*, 27 Cal. 4th 766, 768 (2002) (observing that CIPA was passed to "replac[e] prior laws that permitted the recording of *telephone* conversations with the consent of one party to the conversation") (emphasis added). Plaintiff seeks to apply CIPA to Redfin's use of commonplace pixels and cookies on the Website. But a growing number

of California courts have held that CIPA does not apply to internet browsing or communications, especially with respect to PR/TT claims under Section 638.51. *See, e.g.*, RJN, Ex. 4; *Blaker v. NetScout Systems, Inc.*, No. 25STCV31283, at 7 (Cal. Super. Ct. May 27, 2026) (sustaining demurrer to Section 638.51 claim and reasoning in part, "[T]he internet was in widespread use when these provisions were enacted in 2015. If the Legislature had intended for [S]ection 638.51 to apply to commercial websites, it would have so stated either in the statute itself or in the surrounding materials.")*Schallert v. Palo Alto Networks*, No. 25STCV17109, 2026 Cal. Super. LEXIS 24039, at *5 (Cal. Super. Ct. Mar. 6, 2026) ("Because the court finds that the CIPA does not extend to website communications, the court finds that Plaintiff has not met their burden to state facts sufficient to constitute a cause of action"); *Cammorata v. Sonifi Sols., Inc.*, 2026 Cal. Super. LEXIS 17831, at *4 (Cal. Super. Ct. Feb. 18, 2026) ("The Legislature enacted this statute in 1967--the internet did not exist then . . . . [T]he Court is not aware of any binding legal authority that extends the application of CIPA to the internet."); *Schallert v. Orkin LLC*, No. 24STCV31244, 2025 Cal. Super. LEXIS 85120, at *6-17 (Cal. Super. Ct. Dec. 15, 2025) (analyzing statutory framework and legislative history in detail and concluding that neither supported applying CIPA to website communications); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 Cal. Super. LEXIS 710, at *5-9 (Cal. Super. Ct. Jan. 27, 2025) (rejecting application of CIPA's pen register provision to internet communications based on the statute's plain language and legislative intent).

Redfin acknowledges that some courts have allowed CIPA claims to proceed beyond the pleadings stage. *Compare, e.g.*, *Sanchez*, 2025 Cal. Super. LEXIS 710, at *8 (limiting the application of Section 638.51 to telephone devices) *with Price v. Headspace, Inc.*, No. 24STCV19921, 2025 Cal. Super. LEXIS 27951, at *5 (Cal. Super. Ct. Apr. 1, 2025) (finding that Section 638.51 is not limited to devices that can attach to a telephone line). However, since CIPA is a criminal statute, its interpretation is subject to the rule of lenity, which "requires that ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation." *Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) (courts must "interpret any ambiguity in the statute in petitioner's favor" and "rule of lenity applies" where a "criminal statute" "has both

criminal and noncriminal applications" and is applied in a "noncriminal context"); *People v. Reynoza*, 15 Cal. 5th 982, 1012 (2024); *Harrott v. County of Kings*, 25 Cal. 4th 1138, 1154 (2001) (the rule of lenity "applies even though this is not a criminal prosecution because the statute we are construing imposes criminal penalties"). "When language of a criminal statute is reasonably susceptible of two interpretations, the rule of lenity ordinarily supports an interpretation of that language favorable to a party who may be subject to criminal prosecution or penalties." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1329 (2009).

The rule of lenity should apply here to preclude Plaintiff's expansive interpretation of CIPA that would criminalize basic operations of the internet, an absurd result that the Legislature cannot have intended. *See* RJN, Ex. 5, *Garcia v. Diversified Foodservice Supply, LLC*, No. 24STCV19784 (June 24, 2025), at 5 ("Section 638.51 did not intend to criminalize the process by which all websites communicate with all users who choose to access them."). "Application of the rule of lenity ensures that criminal statutes will provide fair warning concerning conduct rendered illegal[.]" *People ex rel. Lungren v. Super. Ct.*, 14 Cal. 4th 294, 312–13 (1996) (citation omitted). Indeed, another court in this District recently applied the rule of lenity in interpreting Section 631(a) of CIPA narrowly, explaining:

> There is reason to question whether the Legislature intended for CIPA to apply to the type of conduct implicated by this case at all. Recall that CIPA was enacted in 1967. Its language—with words like "read" and "intercept" and "in transit"—is ill-suited for application to internet communications. The Legislature has never, in over four decades, amended Section 631 to adapt its language to the digital age. And California has since adopted other statutes that more clearly speak to the practice of data sharing . . . . [C]ourts should not contort themselves to fit the type of conduct alleged in this case into the language of a 1967 criminal statute about wiretapping.

*Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118–19 (N.D. Cal. 2025) (citation and footnote omitted).

The Court should therefore dismiss Plaintiff's CIPA claims because the statute does not apply to the use of website cookies and pixels.

***b) Plaintiff fails to allege a wiretapping claim under Section 631(a).***

Even if CIPA applied to internet communications, Plaintiff's wiretapping claim still fails because he fails to plead all of the required elements. Section 631(a) is violated when a person "reads,

or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable," or "aids, agrees with, employs, or conspires with" another to do the same. Cal. Penal Code § 631(a). The claim is deficient because Redfin cannot be held liable as the eavesdropper, and because he fails to plausibly allege that: (1) Redfin transmitted the "contents" of his communications; (2) his communications were intercepted "in transit"; and (3) Redfin aided a third-party in violating Section 631(a).

***No Liability for Participants.*** Plaintiff alleges that "Defendant used tracking software on the Website to intercept and collect information about Website visitors' behavior and activity on the Website." (Compl. ¶ 112). As a party to Plaintiff's alleged communications, Redfin cannot be directly liable under CIPA as an eavesdropper. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 757 (N.D. Cal. 2023); *Warden v. Kahn*, 99 Cal. App. 3d 805, 811 (1979) ("[S]ection 631 . . . has been held to apply only to eavesdropping by a third party and not to recording by a participant to a conversation.").

***No contents of communications.*** CIPA prohibits unauthorized access to the "contents" of a communication. Cal. Pen. Code § 631(a). The "contents" of an online communication "refer[] to the intended message conveyed by the communications" as opposed to "record information regarding the characteristics of the message that is generated in the course of the communication." *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (quoting *In re Zynga Privacy Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014)). However, numerous courts have held that routine website tracking tools do not transmit the "contents" of communications in potential violation of CIPA. For example, courts have dismissed CIPA claims on the grounds that tracking "keystrokes, mouse clicks, [and] pages viewed" are not "content" under CIPA. *Id.* at 1082-83 ("[n]one of these pieces of data constitutes message content in the same way that words of a text message or an email do"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 832-33 (N.D. Cal. 2021); *Johnson v. Blue Nile, Inc.*, No. C 20-08183 LB, 2021 WL 1312771, at *2 (N.D. Cal. Apr. 8, 2021) (providing that IP addresses are "not content"). As described above in Section IV.B.1, the Complaint lacks facts describing Plaintiff's personal interaction with the Website and what of his information specifically was allegedly transmitted without his consent.

Plaintiff therefore fails to plausibly allege that the "contents" of his communications with Redfin were intercepted.

***No interception in transit.*** The Complaint also fails to allege that Plaintiff's alleged communications were intercepted while in transit via the use of the Trackers. To state a violation of Section 631(a), a plaintiff must allege that the third party listens to a communication "*while* the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." Cal. Penal Code § 631(a) (emphasis added). In other words, the allegations must demonstrate a party intercepted the communication during its transmission, rather than once it was placed in electronic storage. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 876-77 (9th Cir. 2002). For this element to be plausibly alleged, "factual allegations regarding the method, or nature, of interception are required." *Heiting v. Taro Pharms. USA, Inc.*, 728 F. Supp. 3d 1112, 1126 (C.D. Cal. 2024).

Plaintiff makes only the conclusory allegation that the Trackers operate "in real time" to collect and transmit user information, without any factual allegations describing how exactly the transmission occurs. (Compl. ¶ 66.) Courts, including in this District, have found such allegations to be insufficient and dismissed Section 631(a) claims on that basis. *See, e.g.*, *Valenzuela*, 674 F. Supp. 3d at 758 ("Plaintiff alleges Defendant's code 'allows the [third party] to secretly intercept in real time, eavesdrop upon and store transcripts of Defendant's chat communications[.]' But how? That statement does little more than restate the pleading requirement of real time interception."); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) ("Cody's conclusory allegations restating the pleading requirement of real-time interception fail to provide specific factual allegations.").

Indeed, it is unclear whether Plaintiff can plausibly allege this element as to all of the Trackers asserted in the Complaint. *See, e.g.*, *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1119 (N.D. Cal. 2025) (granting summary judgment in favor of defendant "[b]ecause the evidence is undisputed that Meta did not read, attempt to read, or attempt to learn the contents of Doe's communications with ERC while those communications were in transit"); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 951 (N.D. Cal. 2017) (discussing Facebook's pixel: "More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's

decision to embed the code allows that connection to occur, but the connection happens independently."), *aff'd,* 745 F. App'x 8 (9th Cir. 2018).

***No aiding of a third-party's violation of CIPA.*** Section 631(a) imposes liability on any person "who aids, agrees with, employs, or conspires with any person" to engage in interception of communications without consent. One, Plaintiff has failed to allege that "contents" of his communications were intercepted "in transit" by a third party, as required to state a primary violation of Section 631(a) by a third party, his claim against Redfin for "aiding" necessarily fails. *See, e.g.*, *Cody*, 718 F. Supp. 3d at 1003 ("[A]s [plaintiff] fails to establish an underlying third-party violation, she cannot allege aiding and abetting liability."). Two, Plaintiff has not alleged any facts that would support a finding of derivative liability under CIPA for Redfin. Plaintiff fails to plausibly allege that Redfin acted with the requisite knowledge or intent required for derivative liability under CIPA; the Complaint lacks any factual allegations that Redfin had knowledge that a third party intended to use the Trackers to violate CIPA. *See Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1124 (S.D. Cal. 2024). That alone is sufficient to dismiss.

Therefore, the Complaint fails to state a violation of Section 631(a) under CIPA, and that claim should be dismissed.

***c) Plaintiff fails to allege a PR/TT violation under Section 638.51.***

Likewise, even assuming that CIPA applied to internet communications, Plaintiff still fails to state a claim for violation of Section 638.51, which governs the use of pen registers and trap and trace devices. For this theory, Plaintiff alleges that the Trackers are pen registers, which Redfin had no legal authority to install or use. (Compl. ¶¶ 79-88.) A pen register is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted[.]" Cal. Penal Code § 638.50(b). The Complaint, however, fails to plausibly allege that the Trackers are pen registers.

**First**, Plaintiff does not allege that the Trackers enable Redfin to learn who else he is contacting; at most he alleges that information about his own interactions with the Website is collected. But the defining feature of a pen register is that it allows the installer of the device (e.g., Redfin,

according to Plaintiff) to learn who else the target of the device (e.g., Plaintiff) is contacting based on the information collected. "The statute does not prohibit a defendant from collecting identifying information about who the defendant is communicating with and who is communicating with the defendant. Obviously, when a person goes on a website to make a purchase, the website needs to know who that person is." RJN, Ex. 6, *Camacho v. DG Premium Brands LLC*, No. 24STCV21672 (Cal. Super. Ct. Apr. 17, 2025) ("*Camacho*"), at 3 (sustaining demurrer to Section 638.51 claim based on use of website pixel). As one court in this District recently explained:

> [T]he statute's definition of "pen register" necessarily applies only to a device or process *separate from the source of the transmitted communications*. To interpret the statute otherwise would lead to absurd results. For example, if read the other way, the pen register statute would create criminal liability for call logs on cell phones because the logs list routing information like the phone numbers called from a particular phone.

*In re Apple Data Priv. Litig.*, No. 5:22-CV-07069-EJD, 2026 WL 146025, at *3 (N.D. Cal. Jan. 20, 2026) (emphasis added).

Because the Complaint does not allege that Redfin can discern who *else* Plaintiff is communicating with, the Trackers are not pen registers. *See, e.g.*, RJN, Ex. 7, *Heiting*, at 5 (sustaining demurrer to Section 638.51 claim based on use of TikTok Pixel for this reason); RJN, Ex. 6, *Camacho* at 3–4 ("Here, the allegations are not that Defendants were trying to learn who Plaintiff was communicating with or who was communicating with Plaintiff. Rather the allegations are that Defendants used devices to obtain Plaintiff's IP address and other undefined 'personal information.' That does not fit the definitions in section 638.50." (citation omitted).)

**Second**, and independently, the Trackers cannot be pen registers because they allegedly can capture "contents" of communications. By definition, a pen register cannot capture the "contents" of communications. Cal. Penal Code § 638.50(b). By Plaintiff's own (generic) allegations, however, the Trackers are capable of just that: "The communications intercepted by the Trackers, are 'contents' within the meaning of CIPA and the ECPA because they reveal substantive information about the user's interests, preferences, and potential consumer behavior." (Compl. ¶ 78.) Plaintiff thus plainly alleges that the Trackers can capture the "contents" of communication—as he must for his Section 631(a) claim—such that they cannot be pen registers within the meaning of CIPA. Therefore, the

Section 638.51 claim must be dismissed. *See, e.g.*, *In re Apple Data Priv. Litig.*, 2026 WL 146025, at *4-5 ("Collection of the same communications thus cannot simultaneously violate both [Section 631(a) and Section 638.51]."); *Mitchener v. Curiositystream, Inc.*, 815 F. Supp. 3d 845, 852 (N.D. Cal. 2025) ("If Defendant instead collects content information from communication between the parties (e.g., information provided from Plaintiff to Defendant directly), then the TikTok software is not a trap and trace device and § 638.50 does not apply.").

**4. Plaintiff fails to allege a violation of ECPA.**

Under ECPA, it is unlawful for any person to "intentionally intercept[]" or "intentionally disclose[] . . . the contents of any" electronic communications with third parties. 18 U.S.C. § 2511(a), (c). Plaintiff's ECPA claim must be dismissed because (1) ECPA is a one-party consent statute and Redfin's consent precludes liability under the statute; and (2) Plaintiff fails to allege, as with his CIPA claim, that the "contents" of his communications were intercepted and/or that the interception occurred while the communication was in transmission.

***One-party consent.*** Because Plaintiff consented to the Redfin Privacy Policy, there is two-party consent and the Court need not reach this argument. If for any reason the Court disagrees with that, this claim should still be dismissed because Redfin consented. ECPA explicitly provides an exception to liability where the alleged interceptor is "a party to the communication." 18 U.S.C. § 2511(2)(d) ("It shall not be unlawful . . . for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication."). Thus, "[t]he consent of one party is a complete defense to a Wiretap Act claim." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1026 (N.D. Cal. 2014). Redfin, as the alleged operator of the Website and a party to Plaintiff's alleged communications (Compl. ¶¶ 1, 63, 64), necessarily consented to any alleged interception of those communications. *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) ("[I]t necessarily follows that one of the parties to the communication—the websites themselves—gave prior consent to such interception.") (citation modified). Therefore, Plaintiff's ECPA claim must be dismissed. *See, e.g., Doe I v. Google LLC*, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023) ("The plaintiffs have not shown they are likely to succeed on their ECPA claim because the ECPA

makes explicit that it is not unlawful to intercept a communication if one of the parties to the communication has given prior consent."); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120-21 (S.D. Cal. 2023) (dismissing ECPA claim because defendant was the intended destination of the communications sent by plaintiff to defendant's website).

***Crime-tort exception does not apply.*** Under ECPA, consent is not a defense where the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Plaintiff invokes the crime-tort exception to try to avoid the one-party consent rule, (Compl. ¶¶ 73-74), but Plaintiff fails to allege that Redfin intercepted his communications for a criminal or tortious purpose.

First, the Complaint does not allege "any act independent of the interception itself" that was "done for a criminal or tortious purpose." *Sisti*, 2026 WL 1223927, at *7. All Plaintiff alleges is that Redfin's consent is not a defense because Redfin's "interception and disclosure of the communications also violates CIPA [and other laws]." (Compl. ¶ 74.) However, the crime-tort exception under ECPA is not triggered "when, as here, the tortious conduct is the alleged wiretapping itself." *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1119 (S.D. Cal. 2023); *Sisti*, 2026 WL 1223927, at *7 ("By claiming that Bosley had a 'tortious purpose' in disclosing Plaintiff's website interactions to third parties, Plaintiff is merely claiming that the *interception itself* was committed for a tortious purpose."). Otherwise, the exception would swallow the rule.

Second, the crime-tort exception requires that the "primary motivation or a determining factor in the interceptor's actions has been to injure plaintiff[] tortiously." *Lakes v. Ubisoft, Inc.*, 777 F. Supp. 3d 1047, 1057 (N.D. Cal. 2025). Nowhere in the Complaint does Plaintiff allege facts to suggest that Redfin's primary motivation was to injure Plaintiff tortiously. As just noted above, Plaintiff's primary allegation in support of the exception is that the alleged interception violated other laws, but that is insufficient. *See Zocco v. Nelnet, Inc.*, No. 25-cv-04470-NW, 2026 WL 242037, at *5 (N.D. Cal. Jan. 29, 2026) ("Plaintiffs must do more than simply assert that Defendant's conduct was illegal or tortious. Instead, Plaintiffs need to focus on whether the purpose for the interception—its intended use—was criminal or tortious not whether the interception violated another law.") (citation modified). Notably,

the Complaint itself undercuts Plaintiff's position; Plaintiff alleges that Redfin's purpose in using the Trackers was to "maximize revenue from selling advertising space on the Website and for [its] own financial benefit." (Compl. ¶ 150.) But courts have held that acting in pursuit of economic gain does not constitute a criminal or tortious purpose that would trigger the exception. *See, e.g.*, *Lakes*, 777 F. Supp. 3d at 1058 (finding crime-tort exception did not apply because the purpose of the interception was not "to perpetuate torts on millions of Internet users, but to make money"); *Katz-Lacabe*, 668 F. Supp. 3d at 945 (same). The crime-tort exception therefore does not preclude application of the one-party consent rule, and Plaintiff's ECPA claim should be dismissed.

***No contents or interception in transmission.*** Even assuming that the crime-tort exception applied, ECPA has the similar "contents" and interception in transit requirements as CIPA. *See* 18 U.S.C. § 2511(a), (c); *Konop*, 302 F.3d 876–77. For the reasons explained above in Section IV.B.2.a, the Complaint lacks sufficient factual allegations describing Plaintiff's personal interaction with the Website to plausibly support that the contents of his alleged communications were intercepted, and that the alleged interception occurred while the communication was in transmission.

Therefore, the Complaint fails to state a violation of ECPA, and that claim should be dismissed.

**5. Plaintiff fails to allege a violation of CDAFA.**

Plaintiff's claim under CDAFA should be dismissed because that statute has no application here and because Plaintiff has not alleged the required element of damages.

CDAFA is California's computer crime law that prohibits the "tampering, interference, damage, and unauthorized access to lawfully created computer data and computer systems." Cal. Penal Code § 502(a). The statute "appears to be aimed at 'viruses or worms,' and other malware that usurps the normal operation of the computer or computer system." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865, at *39, *41 (N.D. Cal. Sep. 20, 2011) (dismissing CDAFA claim based on "access to consumers' data" through "surreptitious tracking codes"). In other words, it does not apply to the collection of IP addresses and other browser information as part of routine website operations, like that alleged here.

Even assuming that CDAFA applies in these facts (and it does not), Plaintiff lacks statutory standing to sue. The CDAFA claim should be dismissed because he does not plausibly allege that he has suffered any "damage or loss" as a result of Redfin's alleged conduct, as required to bring a claim under CDAFA. Cal. Penal Code § 502(e). He makes only the conclusory allegation that he "suffered damages," without explaining why or how. (Compl. ¶ 150.) The Website is free to use, so Plaintiff cannot claim any out-of-pocket losses. Furthermore, any alleged loss of value in his information is insufficient to establish standing. *See Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1082 (N.D. Cal. 2023) (finding that a diminution of the value of disclosed information was not a loss or damage within the meaning of CDAFA); *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) ("Plaintiffs offer no support for their theories that the loss of the right to control their own data [and] the loss of the value of their data . . . is 'damage or loss' within the meaning of the CDAFA.").

**6. Plaintiff fails to allege a claim for invasion of privacy.**

"The California Constitution and the common law set a high bar for an invasion of privacy claim." *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). For an invasion of privacy claim under the California Constitution, courts consider whether "(1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiff does not plausibly allege either element.

***No Protectable Privacy Interest.*** Plaintiff has not alleged what legally recognized privacy interest of his has been violated. To the extent Plaintiff relies on collection of his IP address, browser type, and other device information, that is not private information: "It is well-established that there is no legally protected privacy interest in information such as device type and browser type." *In re USA Today, Co. Internet Tracking Litig.*, No. 24-cv-05150-MMC, 2026 WL 932655, at *2 (N.D. Cal Apr. 6, 2026) (citing *Popa v. Microsoft Corp*., 153 F.4th 784, 791 (9th Cir. 2025)) (affirming dismissal of privacy claim predicated on device and browser type, among other things, since tracking of such information is not remotely similar to the "highly offensive" disclosures actionable at common law). Plaintiff otherwise has no reasonable expectation of privacy in his visit to the Website, which is free to use and provides access to real estate information to the public. *See In re Facebook Internet*

*Tracking Litig.*, 140 F. Supp. 3d 922, 933 n.5 (N.D. Cal. 2015) ("Plaintiffs could not have held a subjective expectation of privacy in their browsing histories that was objectively reasonable because Internet users have no expectation of privacy in the . . . IP addresses of the websites they visit ") (citation modified).

***No highly offensive intrusion.*** Nor can Plaintiff allege any highly offensive intrusion by Redfin. When determining whether an intrusion is "highly offensive," courts consider "the degree and setting of the intrusion," as well as "the intruder's motives and objectives." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 295 (2009). Courts have long held that sharing routine web browsing information with third parties is not highly offensive. *See Popa*, 153 F.4th at 791 (holding no "highly offensive" intrusion alleged where plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected by Clarity"); *Thomas v. Papa John's Int'l, Inc.*, Nos. 24-3557, 24-3834, 2025 U.S. App. LEXIS 15039at *3–4 (9th Cir. June 18, 2025) (affirming dismissal of intrusion upon seclusion and CIPA claims based on use of website pixels); *Low*, 900 F. Supp. 2d at 1025-26 (using cookies to share visitors' browsing histories and LinkedIn IDs with third parties did not amount to a highly offensive disclosure of information); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 973-74, 987 (N.D. Cal. 2014) (sharing identifying information, browsing habits, search queries, and demographic information was not highly offensive). Plaintiff alleges that he visited the Website to look at property listings (Compl. ¶ 90), which are publicly accessible; he does not allege that Redfin collected any confidential or private information from him. This is nothing that comes close to a highly offensive invasion. Under these authorities, the Complaint fails to allege a claim for invasion of privacy.

**7. Plaintiff fails to allege a violation of the UCL.**

Plaintiff fails to state a UCL claim for at least three reasons.

*One*, Plaintiff's UCL claim fails because he lacks statutory standing to sue. To have standing under the UCL, "a private party must . . . establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., *economic injury*[.]" *Veera v. Banana Republic, LLC*, 6 Cal. App. 5th 907, 916 (2016) (citation modified) (detailing Bus. & Prof. Code ¶ 17204). UCL standing is

"substantially narrower than federal standing under article III[.]" *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 324 (2011).

Plaintiff alleges that he was economically harmed through "the loss of [his] legally protected interest in the privacy of [his] personal information, data, and communications. In addition, [Redfin] treated the personal information, data, and communications of Plaintiff[] as its own property, and sold an/or otherwise used it for profit, causing a loss of money and property to Plaintiffs." (Compl. ¶ 166.) These allegations do not support a cognizable economic injury because Plaintiff does not allege that he actually incurred any financial losses; any harm alleged is purely hypothetical. The Website is free to use, so Plaintiff has not incurred any out-of-pocket losses.

"Courts in this circuit have dismissed cases where, like here, the injury is based on the loss of the inherent value of their personal data, as well as where it was undisputed that plaintiffs paid no money to the defendant." *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1066 (C.D. Cal. 2024) (collecting cases) (citation modified), *recons. granted in part*, No. EDCV 23-2092 JGB (DTBx), 2024 U.S. Dist. LEXIS 67497 (C.D. Cal. Apr. 11, 2024). Courts have also consistently held that even where information is valuable in the abstract or a defendant might profit from it does not mean the plaintiff lost money or property. *See, e.g.*, *Ahringer v. LoanDepot, Inc.*, 715 F. Supp. 3d 1274, 1284 (C.D. Cal. 2024) ("[J]ust because Plaintiffs' personal information is valuable, as they allege, does not mean that they lost money or property because LoanDepot disclosed their information to Jornaya . . . . There is no indication from Plaintiffs' Complaint that they could or would have sold the personal information that LoanDepot allegedly unlawfully disclosed to Jornaya and lost the ability to do so because of Defendants' actions."; *Tanner v. Acushnet Co.*, No. 8:23-CV-00346-HDV-ADSX, 2023 WL 8152104, at *8 (C.D. Cal. Nov. 20, 2023) ("While Plaintiff alleges he may have been able to sell his web browsing history in the aggregate, he does not allege that his specific communications with Acushnet during the browsing session . . . could be sold.…This conclusion aligns with the weight of authority finding that Plaintiff must show—not just that data is valuable in the abstract or in the aggregate—but that the information had actual economic value to Plaintiff, which was lost.").

*Two*, even assuming that Plaintiff had statutory standing to sue under the UCL, he fails to plead a plausible violation under any of the statute's three prongs. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]" Cal. Bus. & Prof. Code § 17200. Each of these three prongs—unlawful, unfair, and fraudulent—provides a separate theory of liability. Plaintiff's unlawful prong claim fails because he does not allege a predicate violation of CIPA, ECPA or CDAFA (Compl. ¶ 164), for the reasons described above. *See Monet v. JPMorgan Chase Bank, N.A.*, No. 17-CV-00623-LHK, 2017 U.S. Dist. LEXIS 143419, at *22 (N.D. Cal. Sep. 5, 2017) (plaintiff's failure to adequately allege an underlying statutory violation is fatal to plaintiff's UCL claim premised on those statutory violations).

Plaintiff does not allege any fraudulent conduct by Redfin for his UCL claim, far less specific factual allegations that satisfy Rule 9(b)'s heightened pleading standard for fraud claims. *See In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d at 984 ("Under the fraudulent prong, Plaintiffs must allege *specific facts* to show that the members of the public are likely to be deceived by the actions of the defendant. The Ninth Circuit has established that this prong always is subject to Fed. Rule Civ. P. 9(b)'s heightened pleading requirements.") (citing to *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)).

The UCL's remaining unfair prong fails because it is alleged only in conclusory terms. (*See* Compl. ¶¶ 164-68.) Plaintiff complains of trackers and generically alleges that "Defendant's practice was also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities do not share, collect, or transmit data without consumer consent." (*Id.* ¶ 165.) But Plaintiff's consent precludes any concept of unfairness. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1169–70 (9th Cir. 2012) (finding no unfairness in part because plaintiff checked the box indicating his assent to terms and conditions, which meant he had the means to avoid the alleged harm). And, the California Consumer Privacy Act, California's comprehensive website privacy statute passed in 2018, expressly permits companies to deploy website trackers provided that they offer an opt-out right from the sale or sharing of data. *See* Cal. Civ. Code § 1798.120(a)(1). There can be no finding of unfairness where the conduct alleged here is authorized by California law.

Three, Plaintiff's claim fails for want of any cognizable equitable relief. "A UCL action is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1143, 1144 (2003). Plaintiff does not seek any relief that is restitutionary in nature; indeed, he did not pay anything to Redfin. *Id.* Moreover, as this Court recently held: "To the extent plaintiff seeks restitution, plaintiff fails to plead he 'lacks an adequate remedy at law' [citation]; in particular, any such sum sought can be recovered as damages" under his other claims. *Zhang v. Ikea N. Am. Servs., LLC*, No. 24-cv-01641-MMC, 2026 LX 28285, at *3-4 (N.D. Cal. Jan. 22, 2026) (citing *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020)). Here, privacy claims like invasion of privacy, ECPA, and CIPA, provide for damages, and that overlapping relief for the same supposed harm means Plaintiff cannot plead an inadequate remedy at law. Further, "to the extent he requests issuance of an injunction, plaintiff lacks standing to seek such relief; in particular, plaintiff fails to show 'a reasonable likelihood of future injury . . . given plaintiff's knowledge of the alleged defect and failure to plead an 'intent to purchase the product in the future.'" *Zhang*, 2026 LX 28285, at *3-4 (citations omitted). Plaintiff now knows the Website has cookies (including because he consented to them long ago) and so he cannot claim future harm from their use.

**8. Dismissal should be without leave to amend.**

Plaintiff's asserted claims suffer from substantive defects that cannot be cured by amendment. The deficiencies do not stem from insufficient factual allegations but rather the absence of a viable legal theory. Accordingly, further amendment would be futile, and leave to amend need not be granted. *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1298 (9th Cir. 1998).

## V. <u>CONCLUSION</u>

For all these reasons, Redfin respectfully requests that the Court dismiss Plaintiff's Complaint, without leave to amend. To the extent the Court denies this Motion, the Complaint should also be stayed as set forth in Redfin's Motion to Compel Arbitration.

Dated: June 22, 2026

RACHEL E. K. LOWE
GILLIAN H. CLOW
TRACY YAO
OMAR MORQUECHO
**ALSTON & BIRD LLP**

By: ______________________
Rachel E. K. Lowe
Attorneys for Defendant Redfin Corporation