**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Counsel for Plaintiff, on behalf of himself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SAM CACAS, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>REDFIN CORPORATION, a Delaware Corporation; and DOES 1-100, inclusive,<br><br>Defendants. | Case No: 3:26-cv-04566-MMC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION OF CLAIMS ASSERTED BY PLAINTIFF**<br><br>Hearing Date: July 31, 2026<br>Hearing Time: 9:00 p.m.<br>Courtroom: 7<br><br>Hon. Maxine M. Chesney |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. FACTUAL AND PROCEDURAL BACKGROUND .......... 2

III. LEGAL STANDARD .......... 3

IV. ARGUMENT .......... 4

A. Defendant Fails to Carry its Burden to Prove Formation of Any Arbitration Agreement With Plaintiff .......... 4

B. Defendant Does Not Prove Actual Notice or Reasonably Conspicuous Inquiry Notice of Any Arbitration Agreement .......... 6

C. Defendant Does Not Prove Any Affirmative Manifestation of Assent .......... 7

D. Defendant's Proof Package Is Further Undermined By Foundational Defects, Demonstrative Screenshots, And Version-Control Problems .......... 9

E. Defendant's Delegation, Scope, Class-Waiver, AAA, And FAA-Stay Arguments Do Not Matter Unless Defendant First Proves Contract Formation .......... 10

V. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

## Cases


*Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022) ...................... passim

*Douglas v. U.S. Dist. Ct. ex rel. Talk Am., Inc.*, 495 F.3d 1062, 1066-67 (9th Cir. 2007) ........... 4, 8

*Espejo v. S. Cal. Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1062-63 (2016) ........................ 6

*Fabian v. Renovate Am., Inc.*, 42 Cal. App. 5th 1062, 1067-73 (2019)............................. 4, 5, 9, 10

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995)....................................... passim

*Gamboa v. Ne. Cmty. Clinic*, 72 Cal. App. 5th 158, 166-69 (2021) ............................................ 4, 5

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296-97 (2010) ........................... passim

*Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024) ........................... 4, 6, 7

*Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)...................... 3

*Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862-65 (2016) ............................... 2, 7, 8

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th Cir. 2014) .......................... 2, 4, 6, 8

*Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284-89 (9th Cir. 2017).............. 2, 4, 8

*Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-17 (9th Cir. 2023) ............................. 4, 6, 7

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ..... 4

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) .......................................................... 3

*Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394, 413 (1996) ............................................. 4

*Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 843-47 (2014) ...................... 4, 5, 9, 10

*Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471-84 (2021) .................................................. 7

*Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1085-87 (9th Cir. 2020) .................................. 7

Three *Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991)... 4, 10, 11


## Statutes


9 U.S.C. § 4 ......................................................................................................... 4, 12

## I. INTRODUCTION

Defendant Redfin Corporation's ("Defendant") motion fails at step one because Defendant has not carried its burden to prove that Plaintiff ever entered any arbitration agreement with Defendant.

That failure is dispositive. Under the Federal Arbitration Act, arbitration is a matter of consent, not coercion. Before a court can compel arbitration, Defendant must prove a valid agreement to arbitrate under ordinary state-law contract principles. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944-45 (1995); *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296-97 (2010). In the online-assent context, Ninth Circuit law requires two things: reasonably conspicuous notice of the terms and an unambiguous manifestation of assent. *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022). Defendant proves neither.

This is a browse-based privacy case. The Complaint alleges that Defendant deployed trackers on website visitors and shared data with third parties when users visited Defendant's website in March 2026. Compl. ¶¶ 1-5, 69-72, 90-97. Defendant's proof package does not match that theory or that timeframe. Instead, Defendant relies on: (1) a declaration stating that one account in the name of "S Cacas" was created on September 14, 2025, with a 415 area-code phone number and an email username containing "sam"; (2) screenshots that Nemenman says were "substantially similar or the same" as Defendant's September 2025 sign-up/sign-in flow; (3) archived Terms of Use updated March 5, 2025; (4) an archived Privacy Policy updated December 9, 2024; and (5) a cookie banner stating that "[b]y using our site" the visitor agrees to cookies, the Terms of Use, and the Privacy Policy. Nemenman Decl. ¶¶ 3-14 & Exs. A-B.

That is not enough. Defendant does not produce any click log, sign-up log, login audit trail, IP address, device ID, browser data, session history, or March 2026 account-use evidence tying Plaintiff's alleged March 2026 visit to any assent to arbitration. It does not show Plaintiff saw the alleged sign-in-wrap notice on the relevant device, browser, or date. It does not prove Plaintiff ever clicked any button tied to assent. And its cookie-banner theory is legally insufficient because passive browsing, ignoring a banner, dismissing a pop-up, or merely continuing to use a website is not affirmative manifestation of assent. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178-79 (9th

Cir. 2014); *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1284-89 (9th Cir. 2017); *Long v. Provide Commerce, Inc.*, 245 Cal. App. 4th 855, 862-65 (2016).

Defendant's motion therefore rises or falls on formation, and on this record it falls. The Court should deny the motion in its entirety. At minimum, if the Court concludes there is a genuine dispute of material fact as to formation, it should deny the motion without prejudice pending targeted formation discovery or proceed to the summary trial required by FAA § 4.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action on March 30, 2026. The Complaint alleges that Defendant's website installed trackers, cookies, pixels, and related technologies on visitors' browsers; intercepted users' website interactions; and shared identifying and behavioral data with third parties without prior consent. Compl. ¶¶ 1-5, 38-58. The Complaint further alleges that Defendant's pop-up cookie banner gives users a "false and misleading sense of security" because trackers deploy immediately upon landing on the website, before a user can configure privacy choices, and because opting out of cookies does not stop non-cookie tracking technologies such as canvas fingerprinting. *Id.* ¶¶ 69-72. As to Plaintiff specifically, the Complaint alleges that Plaintiff visited the website "in and around March 2026" to look at property listings, after which Defendant caused trackers to be installed on his browser and used the collected data for analytics and targeted advertising. *Id.* ¶¶ 90-97.

Defendant moved to compel arbitration on June 22, 2026. Defendant's motion turns on the assertion that Plaintiff is a Defendant accountholder and therefore agreed to Defendant's Terms of Use, including the arbitration clause. Mot. at 1-3, 4-8.

Defendant's only evidentiary support for that formation theory is the declaration of Eugenia Nemenman. Nemenman states that she is Defendant's Vice President of User Growth Engineering and that she reviewed relevant business records. Nemenman Decl. ¶¶ 1, 12. She states that she located "one record" of a Defendant account registered in the name of "S Cacas," created on September 14, 2025, with a 415 area-code phone number and an email username that includes "sam." *Id.* ¶ 12. She further states that Defendant's records show account activity on at least September 15, 2025, and no opt-out request within 30 days of account creation. *Id.* ¶¶ 13-14.

Nemenman also describes two separate website notices. First, she says California visitors to Defendant.com are presented with a cookie banner stating: "By using our site, you agree to our use of Cookies to collect and share your information, and to our Terms of Use and Privacy Policy." *Id.* ¶¶ 5-6. Second, she says that clicking Defendant's "Join / Sign in" button brings up a modal stating: "[b]y signing in you agree to Defendant's Terms of Use and Privacy Policy," with the Terms of Use hyperlinked. *Id.* ¶¶ 7-10. Crucially, she does not testify that the screenshots attached to her declaration are screenshots from Plaintiff's actual session, Plaintiff's actual device, or even the precise interface that appeared on the dates relevant to Plaintiff's claims. Instead, she says only that the September 2025 sign-up/sign-in flow was "substantially similar or the same" as what she describes, "including the screenshots." *Id.* ¶ 11.

Defendant's motion also relies on archived website documents. Nemenman says Exhibit A is a Wayback Machine copy that "accurately reflects" Defendant's Terms of Use in effect on or around September 14, 2025, and that Exhibit B is a Wayback Machine copy that "accurately reflects" Defendant's Privacy Policy in effect on or around September 14, 2025. Nemenman Decl. ¶¶ 3-4. Exhibit A states that the Terms were "updated on March 5, 2025." Ex. A at 6. Exhibit B states that the Privacy Policy was "Updated: December 9, 2024." Ex. B at 178. Those dates underscore the timing problem in Defendant's proof package: Defendant asks the Court to compel arbitration of a March 2026 browse-based privacy claim using an alleged September 2025 account, demonstrative September 2025 screens, and archived website documents tied to September 2025, while never proving what Plaintiff actually saw, clicked, or agreed to during the visit that forms the basis of this suit.

## III. LEGAL STANDARD

The FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). A court may compel arbitration only after determining that a valid arbitration agreement exists and that the dispute falls within its scope. *Granite Rock*, 561 U.S. at 296-97; *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The party seeking to compel arbitration bears the burden to prove the existence

of an agreement to arbitrate. *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024); *Rosenthal v. Great W. Fin. Secs. Corp.*, 14 Cal. 4th 394, 413 (1996).

Under California law, mutual assent is required for contract formation. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). In the online context, the Ninth Circuit asks whether the user had actual notice or reasonably conspicuous inquiry notice of the terms and whether the user engaged in conduct that unambiguously manifested assent to those terms. *Berman*, 30 F.4th at 856-57; *Nguyen*, 763 F.3d at 1175-79; *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512-17 (9th Cir. 2023). Silence, inaction, or passive use generally is not acceptance under California law. *Norcia*, 845 F.3d at 1284-89; *Douglas v. U.S. Dist. Ct. ex rel. Talk Am., Inc.*, 495 F.3d 1062, 1066-67 (9th Cir. 2007).

Where the very existence of an arbitration agreement is in dispute, that question is for the Court, not the arbitrator. *First Options*, 514 U.S. at 944-45; *Granite Rock*, 561 U.S. at 296-97; Three *Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991). And if "the making of the arbitration agreement" is genuinely in issue, the FAA requires a summary trial. 9 U.S.C. § 4.

## IV. ARGUMENT

### A. Defendant Fails to Carry its Burden to Prove Formation of Any Arbitration Agreement With Plaintiff

Defendant must prove mutual assent by a preponderance of the evidence. *Keebaugh*, 100 F.4th at 1013. In online-assent cases, that requires proof of notice and unambiguous manifestation of assent. *Berman*, 30 F.4th at 856-57. And where assent is alleged to have occurred electronically, the proponent must authenticate the supposed act of assent and link it to the opposing party. *Ruiz v. Moss Bros. Auto Grp., Inc.*, 232 Cal. App. 4th 836, 843-47 (2014); *Fabian v. Renovate Am., Inc.*, 42 Cal. App. 5th 1062, 1067-73 (2019); *Gamboa v. Ne. Cmty. Clinic*, 72 Cal. App. 5th 158, 166-69 (2021).

Defendant never clears that threshold. Its proof of Plaintiff's supposed account ownership is a name fragment, a geographic clue, and a partial email clue: one account in the name of "S Cacas," a 415 area code, and an email username containing "sam." Nemenman Decl. ¶ 12. That is not proof

that Plaintiff created the account, used the account, or clicked through Defendant's sign-in flow on any relevant occasion. Defendant does not disclose the full email address, the full phone number, the IP address, the device identifiers, the browser history, the session information, or any sign-up or login audit trail. It identifies no click record and no timestamped assent event. It offers no March 2026 login data at all.

That omission is especially striking because Defendant's own Privacy Policy says Defendant automatically collects IP address data, cookie information, browser information, page-request and activity information, mobile-device identifiers, and other technical data from both registered and unregistered users, and that such information "may be associated with accounts and other devices." Ex. B at 179, 183. If Defendant could prove that Plaintiff's alleged March 2026 browsing was tied to the account Defendant invokes, its own systems should be able to show that. The motion does not.

Defendant's own Privacy Policy also undercuts the assumption that a database account record necessarily proves Plaintiff personally completed the sign-up flow shown in Figure 3. The policy states that when Defendant receives information from a user "at one of our events, or upon your request," Defendant "will create a Defendant account for you." Ex. B at 180. That means the mere existence of an account record does not, by itself, establish that Plaintiff personally saw the modal Defendant depicts, much less that he assented to arbitration through it.

California courts routinely reject electronic-assent showings like this. In *Ruiz*, the court held that a generic declaration describing an e-signature system, without evidence connecting the signature event to the plaintiff, was insufficient. *Ruiz*, 232 Cal. App. 4th at 843-47. In *Fabian*, the court likewise found the evidence inadequate where the proponent failed to establish that the plaintiff actually signed the electronic arbitration agreement. *Fabian*, 42 Cal. App. 5th at 1068-73. In *Gamboa*, the court again rejected a thin electronic-assent showing because the declarant did not explain the actual security procedures or authentication path linking the document to the plaintiff. *Gamboa*, 72 Cal. App. 5th at 166-69. By contrast, in *Espejo*, the court found authentication sufficient only because the employer submitted detailed evidence about the security procedures, email path, unique credentials, and audit trail for the exact electronic signature event. *Espejo v. S. Cal.*

*Permanente Med. Grp.*, 246 Cal. App. 4th 1047, 1062-63 (2016). Defendant's submission looks like *Ruiz*, *Fabian*, and *Gamboa*, not *Espejo*.

On this record, Defendant has not proven that Plaintiff entered any arbitration agreement. That alone defeats the motion.

**B. Defendant Does Not Prove Actual Notice or Reasonably Conspicuous Inquiry Notice of Any Arbitration Agreement**

The Ninth Circuit requires "reasonably conspicuous notice" of contract terms before inquiry notice can be found. *Berman*, 30 F.4th at 856-57. Whether a notice is conspicuous depends on the "design and content of the relevant interface" and the "overall screen design," including placement, font, contrast, clutter, and the context of the transaction. *Id.* at 857-59; *Oberstein*, 60 F.4th at 516-17; *Keebaugh*, 100 F.4th at 1018-21. Hyperlinks alone, or hyperlinks near buttons "without more," do not suffice. *Nguyen*, 763 F.3d at 1178-79.

Defendant does not prove actual notice. Nothing in Nemenman's declaration says Plaintiff actually saw the sign-in notice, actually opened the sign-in modal, actually clicked any of the buttons shown there, or actually read the hyperlinked Terms. Nor does Defendant prove reasonably conspicuous inquiry notice for the relevant March 2026 visit.

The cookie banner is not enough. By its own terms, it is a cookies notice: "By using our site, you agree to our use of Cookies … and to our Terms of Use and Privacy Policy. Click Cookie Settings for more info or to opt-out of Cookies sharing your data for targeted advertising." Nemenman Decl. ¶ 6. That language is not an account-creation interaction. It is not tied to a button that says "I agree." It does not require the user to check a box or click an assent-specific control. And it appears in the context of privacy and cookies, not in a context where a reasonable consumer would necessarily understand that continued passive browsing would form a sweeping bilateral contract containing an arbitration clause and class waiver.

That is classic browsewrap territory. In *Nguyen*, the Ninth Circuit held that even a conspicuous hyperlink near the relevant buttons was insufficient absent additional notice and affirmative assent. *Nguyen*, 763 F.3d at 1178-79. In *Stover*, the Ninth Circuit likewise refused to find inquiry notice where the design and layout did not make the terms reasonably conspicuous in

context. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1085-87 (9th Cir. 2020). In *Long*, the California Court of Appeal held that continued website use did not create assent where the site failed to provide actual or constructive notice of the terms. *Long*, 245 Cal. App. 4th at 862-65. And in *Sellers*, the court reversed an order compelling arbitration, emphasizing that the site's notice was not sufficiently conspicuous and that the one-off consumer interaction did not suggest entry into an ongoing contractual relationship governed by extensive terms. *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 471-84 (2021).

Defendant's modal proof is also deficient. Nemenman does not say Plaintiff actually saw the modal on March 2026, on September 14, 2025, or on any other date. She says only that the September 2025 flow was "substantially similar or the same" as the screenshots. Nemenman Decl. ¶ 11. But "substantially similar" is not enough in a website-assent case, where the analysis turns on the exact wording, exact placement, exact contrast, and exact screen design that confronted the user. *Berman*, 30 F.4th at 857-59; *Keebaugh*, 100 F.4th at 1018-21.

That defect is fatal here because Defendant offers no device-specific or browser-specific rendering. The declaration does not identify the operating system, browser, viewport, mobile rendering, tablet rendering, zoom level, or any A/B testing or other variation affecting what a user would have seen. Yet the conspicuousness inquiry is interface-specific. Defendant cannot win a motion to compel on generic or demonstrative screenshots that it does not tie to Plaintiff's actual interface.

Defendant's authorities underscore the problem. In *Oberstein*, assent was found only after repeated exposure to the notice during a ticket-purchase flow, with a clearer record of the exact transaction screens. *Oberstein*, 60 F.4th at 514-17. In *Keebaugh*, the Ninth Circuit emphasized the uncluttered screen and the direct placement of the notice relative to the action button the user clicked. *Keebaugh*, 100 F.4th at 1019-21. Defendant has no comparable proof here. It has not shown the exact screen Plaintiff saw or the exact click Plaintiff supposedly made.

### C. Defendant Does Not Prove Any Affirmative Manifestation of Assent

Even where notice is sufficiently conspicuous, there is no contract unless the consumer takes action that "unambiguously manifests" assent. *Berman*, 30 F.4th at 856-57. California law does not

treat silence or inaction as acceptance absent circumstances not present here. *Norcia*, 845 F.3d at 1284-89. "An offeree cannot assent to an offer unless he knows of its existence." *Douglas*, 495 F.3d at 1066.

Defendant cannot establish the assent element through either of its theories. Its cookie-banner theory fails because passive website use is not affirmative assent to arbitration. The banner says "By using our site, you agree" to cookies, the Terms of Use, and the Privacy Policy. Nemenman Decl. ¶ 6. But browsing a website, continuing past a banner, ignoring a banner, dismissing a banner, or closing a pop-up is not the kind of unambiguous manifestation of assent that *Berman* requires. *Berman*, 30 F.4th at 856-57, 862-63. Nor does the banner ask the user to take an assent-specific step. It offers "Cookie Settings" and an opt-out path for cookie sharing in targeted advertising. Nemenman Decl. ¶ 6. That is a privacy-choice mechanism, not a clickwrap contract mechanism.

Defendant cites no controlling Ninth Circuit case compelling arbitration because a consumer merely continued browsing after seeing a cookie notice. And for good reason: Ninth Circuit and California law reject attempts to impose contract terms through passive use absent clear notice and clear assent. *Nguyen*, 763 F.3d at 1178-79; *Long*, 245 Cal. App. 4th at 862-65; *Norcia*, 845 F.3d at 1284-89; *Douglas*, 495 F.3d at 1066-67.

Defendant's sign-in-modal theory fails for a separate reason: Defendant never proves Plaintiff clicked anything. The modal states, "[b]y signing in you agree to Defendant's Terms of Use and Privacy Policy." Nemenman Decl. ¶ 9. The available buttons are "Continue with email," "Continue with Google," and "Continue with Apple." *Id.* ¶ 8 & Fig. 3. Even assuming that language could support a valid sign-in-wrap agreement in the abstract, Defendant still had to prove that Plaintiff was the person who clicked one of those buttons. It did not.

That failure matters because Defendant's whole motion depends on converting a disputed account record into proof of assent. The Court should not make that leap. *Ruiz*, *Fabian*, and *Gamboa* teach that courts do not infer an electronic signature or electronic assent from generic system descriptions and incomplete data points. The same caution applies here.

Moreover, the wording Defendant uses is itself awkward for the burden it bears. The modal says "By signing in you agree," not "By clicking Continue you agree." And Nemenman says the

same interface is used both for creating a new account and for logging in to an existing one. Nemenman Decl. ¶ 10. That blended sign-in/sign-up presentation only reinforces why Defendant needed evidence of the actual event—it was not enough to show a generic interface and invite the Court to infer assent..

### D. Defendant's Proof Package Is Further Undermined By Foundational Defects, Demonstrative Screenshots, And Version-Control Problems

The party moving to compel arbitration must present competent evidence that the specific agreement it seeks to enforce was presented to, and accepted by, the opposing party. *Ruiz*, 232 Cal. App. 4th at 843-47; *Fabian*, 42 Cal. App. 5th at 1068-73. When the proof depends on website screens and online flows, precision matters because the formation analysis is interface-specific. *Berman*, 30 F.4th at 857-59.

Defendant's evidentiary showing suffers from several defects. First, the screenshots are not authenticated as the precise screens Plaintiff saw. Nemenman does not say they are screenshots from Plaintiff's session. She does not say they are screenshots captured on September 14, 2025, September 15, 2025, or March 2026. She says only that the September 2025 flow was "substantially similar or the same," including the screenshots. Nemenman Decl. ¶ 11. That description is consistent with demonstrative evidence, not proof of the actual interface presented to Plaintiff.

Second, the archived website documents do not solve the critical timing problem. Defendant relies on archived Terms updated March 5, 2025 and an archived Privacy Policy updated December 9, 2024. Ex. A at 6; Ex. B at 178. But the lawsuit concerns a March 2026 website visit, while Defendant's proof package is built around an alleged September 2025 account-creation event, demonstrative September 2025 screens, and Wayback copies that Defendant says reflect the Terms and Privacy Policy in effect on or around September 14, 2025. Nemenman Decl. ¶¶ 3-4, 11-14. If Defendant is arguing that Plaintiff assented during a September 2025 account-creation event, it still must prove that event occurred and that Plaintiff assented then. If Defendant is instead invoking website use, continued use, or inquiry notice on the March 2026 visit, then it must identify which exact Terms, Privacy Policy, banner language, and interface governed that visit, and prove that Plaintiff received notice of them. The motion does neither.

Third, Defendant's own Terms underscore the version-control problem. The Terms state that Defendant may update the agreement "at any time, in our sole discretion" and that continued use after posting updated terms binds the user to the updated agreement. Ex. A at 14. That amendment mechanism means version matters. Yet Defendant never identifies which version it says governs Plaintiff's March 2026 claims or how Plaintiff supposedly received notice of updated terms.

Fourth, Defendant's own Privacy Policy confirms that Defendant draws a distinction between "All Users" and "Registered Users," and that Defendant collects data from both. Ex. B at 179-180. That distinction matters because Plaintiff's claims arise from alleged tracking upon website visitation, including before meaningful privacy choices can be exercised. Compl. ¶¶ 69-72, 90-97. Defendant's motion tries to collapse those distinct categories into a single account-based formation theory without the technical proof that its own systems say they collect.

These evidentiary gaps are not minor. They are central to contract formation. Defendant had the burden to prove the who, what, when, and how of assent. Its motion leaves each of those questions unanswered.

### E. Defendant's Delegation, Scope, Class Waiver, AAA, And FAA-Stay Arguments Do Not Matter Unless Defendant First Proves Contract Formation

The party moving to compel arbitration must present competent evidence that the specific agreement it seeks to enforce was presented to, and accepted by, the opposing party. *Ruiz*, 232 Cal. App. 4th at 843-47; *Fabian*, 42 Cal. App. 5th at 1068-73. When the proof depends on website screens and online flows, precision matters because the formation analysis is interface specific. *Berman*, 30 F.4th at 857-59.

#### 1. Formation comes first.

Formation comes first. Courts decide whether parties formed an arbitration agreement before any delegation clause can operate. *First Options*, 514 U.S. at 944-45; *Granite Rock*, 561 U.S. at 296-97; *Three Valleys*, 925 F.2d at 1140-41. A delegation clause inside an unproven contract cannot bootstrap the movant past the formation question.

Defendant argues that the Terms delegate arbitrability to the arbitrator because they incorporate AAA rules and state that the arbitrator has exclusive authority to decide interpretation,

applicability, enforceability, and scope. Mot. at 7-8; Ex. A at 18. But that argument assumes the existence of a contract containing those provisions. The Court cannot assume the very point that Defendant had to prove. *First Options*, 514 U.S. at 944-45. Nor can Defendant use AAA incorporation or delegation language inside a disputed or unproven contract to bypass the Court's duty to decide formation in the first instance. *Granite Rock*, 561 U.S. at 296-97; *Three Valleys*, 925 F.2d at 1140-41.

The same is true of Defendant's scope argument. Defendant says the arbitration clause is broad and covers "any Claim" between Plaintiff and Defendant. Mot. at 10-11; Ex. A at 7, 16. Maybe so—if a contract was formed. But breadth cannot substitute for assent. Until Defendant proves formation, scope is beside the point.

The same is true of the class-action waiver, the AAA-rules incorporation, and the FAA-governance language. Those provisions may matter later. They do not matter now.

And even on Defendant's own papers, its request to send the entire case wholesale to arbitration is overbroad. Defendant's arbitration section provides that if a party seeks injunctive relief whose "primary purpose and effect" is to prohibit unlawful acts threatening future injury to the general public, "the entitlement and extent of such relief must be litigated in a civil court." Ex. A at 17-18. Plaintiff seeks relief aimed at Defendant's alleged unlawful tracking practices. Compl. at Prayer for Relief. Thus, even under Defendant's preferred contract language, a blanket order compelling all claims and all remedies to arbitration sweeps too far.

**2. If the Court finds formation, Plaintiff preserves and does not waive challenges to delegation, AAA incorporation, scope, enforceability, class-waiver operation, or other arbitration defenses.**

Plaintiff's primary position remains that the Court must decide formation first and that Defendant has not proven any arbitration agreement at all. But if the Court were to find formation, Plaintiff specifically disputes and does not waive any challenge to Defendant's delegation theory, AAA-incorporation theory, scope theory, enforceability arguments, class-waiver operation, unilateral amendment language, "latest in time" change language, fee and sanctions provisions,

public-injunctive-relief carveout, or any other arbitration defense, including any unconscionability argument available under applicable law. Ex. A at 14, 16-19.

No enforceability, scope, delegation, or waiver issue should be deemed conceded merely because Plaintiff principally opposes the motion on threshold formation grounds. If the Court reaches those secondary issues, Plaintiff specifically preserves the position that Defendant has not shown clear and unmistakable delegation against this consumer on this record; that AAA incorporation and the sentence assigning the arbitrator "exclusive authority" cannot displace the Court's duty to decide formation; that Defendant's clause cannot be applied as Defendant proposes without separate judicial scrutiny of scope, waiver, and enforceability; and that no challenge to delegation, scope, enforceability, public-injunctive-relief treatment, class-waiver operation, unilateral amendment, or fee-shifting or sanctions provisions should be deemed forfeited. *First Options*, 514 U.S. at 944-45; *Granite Rock*, 561 U.S. at 296-97; *Three Valleys*, 925 F.2d at 1140-41; Ex. A at 14, 16-19.

Finally, Defendant's stay request fails for the same reason. Under *Smith*, a stay is mandatory only when the court finds that the action involves an issue "referable to arbitration" and a party requests a stay. *Smith v. Spizzirri*, 601 U.S. 472, 477-78 (2024). If Defendant has not proven any arbitration agreement, there is nothing referable to arbitration and nothing to stay.

At minimum, if the Court concludes Defendant's thin and circumstantial showing creates a factual dispute rather than a failure of proof, the Court should not compel arbitration on this record. Instead, the Court should permit targeted formation discovery and, if necessary, conduct the summary trial required by 9 U.S.C. § 4.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Compel Arbitration in its entirety and allow this action to proceed in this Court.

In the alternative, if the Court finds a genuine dispute of material fact regarding contract formation, it should deny the motion without prejudice pending targeted formation discovery or proceed to a summary trial under FAA § 4 before ordering arbitration.

Dated: July 6, 2026

**POTTER HANDY, LLP**

/s/ James M. Treglio

By: ______________________________

James M. Treglio
Isabel Rose Masanque
Attorneys for Plaintiff