RACHEL E. K. LOWE (State Bar No. 246361)
GILLIAN H. CLOW (State Bar No. 298966)
OMAR MORQUECHO (State Bar No. 333647)
**ALSTON & BIRD LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: 213-576-1000
Facsimile: 213-576-1100
rachel.lowe@alston.com
gillian.clow@alston.com
omar.morquecho@alston.com

TRACY YAO (State Bar No. 323816)
**ALSTON & BIRD LLP**
55 2nd Street, Suite 2100
San Francisco, CA 94105
Telephone: 415-243-1000
Facsimile: 415-243-1001
tracy.yao@alston.com

Attorneys for Defendant Redfin Corporation

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SAM CACAS, on behalf of himself and all others similarly situated,

Plaintiff,

v.

REDFIN CORPORATION, a Delaware corporation; and DOES 1-100, inclusive

Defendants.

Case No. 3:26-cv-04566-MMC

**DEFENDANT REDFIN CORPORATION'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**

Date: July 31, 2026
Time: 9:00 a.m.
Courtroom: 7

Compl. Filed: March 30, 2026

**TABLE OF CONTENTS**


I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. Redfin's evidence establishes that Plaintiff manifested assent to the Terms of Use by a preponderance of the evidence. ..... 2

B. Plaintiff fails to create a genuine dispute because he offers no evidence and relies only on speculation. ..... 4

C. Plaintiff's remaining browsewrap, cookie banner, and timing arguments do not preclude a finding of assent based on account formation and use. ..... 6

D. Plaintiff is not entitled to formation discovery or a summary trial. ..... 8

E. Plaintiff cannot avoid arbitration by "preserving" unbriefed objections to delegation, scope, or enforceability. ..... 9

III. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015) ....................9

*Driskill v. Experian Info. Sols., Inc.*,
753 F. Supp. 3d 839 (N.D. Cal. 2024) ....................5, 8

*Ghazizadeh v. Coursera, Inc.*,
737 F. Supp. 3d 911 (N.D. Cal. 2024) ....................8

*Gonzales v. Charter Commc'ns, LLC*,
497 F. Supp. 3d 844 (C.D. Cal. 2020) ....................5

*Greenwood v. FAA*,
28 F.3d 971 (9th Cir. 1994) ....................10

*Harris v. DoorDash, Inc.*,
No. 21-cv-09445-JSC, 2023 WL 3324688 (N.D. Cal. May 9, 2023) ....................3, 4

*Houtchens v. Google LLC*,
649 F. Supp. 3d 933 (N.D. Cal. 2023) ....................3, 4

*Indep. Towers of Wash. v. Washington*,
350 F.3d 925 (9th Cir. 2003) ....................10

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024) ....................2, 3

*McLellan v. Fitbit, Inc.*,
No. 3:16-cv-00036-JD, 2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ....................9

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) ....................9

*Oberstein v. Live Nation Ent., Inc.*,
60 F.4th 505 (9th Cir. 2023) ....................2, 7, 8

*Reichert v. Rapid Invs., Inc.*,
56 F.4th 1220 (9th Cir. 2022) ....................2

*Smith v. Inflection Risk Sols., LLC*,
No. 25-cv-07620-TSH, 2026 WL 622116 (N.D. Cal. Mar. 5, 2026) ....................2, 3, 4, 5

*Tabas v. MoviePass, Inc.*,
401 F. Supp. 3d 928 (N.D. Cal. 2019) ....................8

*Young v. ByteDance Inc.*,
700 F. Supp. 3d 808 (N.D. Cal. 2023) ....................................................................10

## I. INTRODUCTION

Redfin Corporation's Motion to Compel Arbitration rests on a straightforward proposition: Plaintiff Sam Cacas agreed to Redfin's Terms of Use when he created and later accessed a Redfin account, and those Terms require arbitration of this dispute. Redfin submitted evidence that Plaintiff maintained a Redfin account associated with his name and identifying information, created the account on September 14, 2025, and used it again the next day. Redfin also presented evidence that users creating or accessing a Redfin account are informed that, by signing up or signing in, they agree to the Terms, which contain the arbitration agreement and delegation provision at issue here.

Plaintiff submits no evidence disputing those facts. He does not deny creating a Redfin account, using it, or that the account belongs to him. Instead, he argues that Redfin should have produced additional technical records that neither California law nor Ninth Circuit precedent requires. Courts routinely find online contract formation based on evidence such as that submitted here: account records, declaration testimony describing the user flow, and evidence showing that the user completed a sign-up or login process after receiving conspicuous notice of the governing terms.

Unable to rebut Redfin's evidence of assent through account creation and login, Plaintiff devotes much of his Opposition to attacking formation via cookie banners, passive browsing, and his purported March 2026 website visit. But Redfin did not move on any of those theories. The Motion is based solely on Plaintiff's registration for a Redfin account and login activity. Plaintiff's discussion of browsewrap principles is not relevant to the question presented in the Motion: whether Plaintiff agreed to Redfin's Terms, which include an arbitration agreement, when he created and later used his Redfin account.

Finally, Plaintiff attempts to avoid meaningfully addressing Redfin's delegation argument by stating that he "preserves" challenges to delegation, scope, enforceability, class-waiver operation, unconscionability, and other arbitration defenses. But a party cannot avoid forfeiture by identifying potential objections while choosing not to actually brief them in opposition. If the Court finds formation—and it should—Plaintiff offers no developed basis for refusing to enforce the delegation clause. Any remaining arbitrability questions therefore belong with the arbitrator.

The Court should therefore compel Plaintiff to individual arbitration and stay this action.

## II. ARGUMENT

### A. Redfin's evidence establishes that Plaintiff manifested assent to the Terms of Use by a preponderance of the evidence.

Courts in this District apply a summary-judgment framework to determine whether a genuine dispute of material fact exists concerning formation of the agreement to arbitrate. *Smith v. Inflection Risk Sols., LLC*, No. 25-cv-07620-TSH, 2026 WL 622116, at *4 (N.D. Cal. Mar. 5, 2026). Redfin must prove "by a preponderance of the evidence that the parties formed an agreement to arbitrate." *Reichert v. Rapid Invs., Inc.*, 56 F.4th 1220, 1227 (9th Cir. 2022); *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1013 (9th Cir. 2024). Redfin meets that standard.

First, Redfin submitted evidence identifying Plaintiff as a Redfin accountholder. Redfin's records show an account registered under the name "S Cacas," associated with an email username containing "sam," a 415-area-code telephone number, and Oakland-area account information. (Declaration of Eugenia Nemenman ¶ 12.) The account was created on September 14, 2025, and Redfin's records reflect further account activity on September 15, 2025. (*Id.* ¶¶ 12, 13.)

Second, Redfin submitted evidence establishing that users could create or access a Redfin account only after receiving notice of—and agreeing to—the Terms of Use containing the arbitration provision. The Nemenman Declaration describes and includes screenshots of the sign-up and sign-in flow, including the notice advising users that, by signing up or signing in, they agree to Redfin's Terms of Use. (Nemenman Decl. ¶¶ 7–10.) The Terms were available through a conspicuous hyperlink presented in connection with the sign-up and login process. (*Id.* ¶ 8.) Users manifested assent by proceeding through the account-registration or login process after receiving that notice. Notably, Plaintiff did not challenge or object to the evidence that Redfin submitted—presumably because he could not credibly do so in front of this Court.

Redfin's evidence satisfies the governing notice-and-assent standard for online contract formation. The Ninth Circuit asks whether the website provided reasonably conspicuous notice of the terms and whether the user took action unambiguously manifesting assent. *See Oberstein v. Live*

*Nation Ent., Inc.*, 60 F.4th 505, 515–17 (9th Cir. 2023) (evaluating the sign-in and transaction flows, the notice presented to users, and the actions required to either sign in or complete a purchase in determining whether online assent existed); *Keebaugh*, 100 F.4th at 1018–21 (examining the sign-in interface, placement of the terms notice, and the user's completion of the account-access process in finding inquiry notice and assent). Redfin identifies the notice presented to users and the actions users were required to take to complete registration or access an account, thereby establishing notice and assent under the Ninth Circuit's framework.

Indeed, courts in this District routinely find online assent established based on evidence similar to what Redfin submitted here. *See Houtchens v. Google LLC*, 649 F. Supp. 3d 933, 939, 943 (N.D. Cal. 2023) (finding assent based on declaration testimony describing the account-creation process, evidence that users were required to accept the terms, and screenshots of screens "substantially similar" to those presented during account creation); *Harris v. DoorDash, Inc.*, No. 21-cv-09445-JSC, 2023 WL 3324688, at *1–2 (N.D. Cal. May 9, 2023) (holding no genuine dispute existed regarding formation where declaration testimony and screenshots showed that agreement to Independent Contractor Agreement was necessary to create an account and that the plaintiff was an accountholder); *Smith*, 2026 WL 622116, at *5 (finding arbitration agreement established based on declaration testimony describing the general process by which consumers verified identity in order to access a website and records showing that the plaintiff accessed the website).

Plaintiff nevertheless argues that Redfin's showing is insufficient because it does not include user-specific screenshots, click logs, IP-address records, browser histories, device identifiers, session data, confirmation emails, or other technical metadata. (*See, e.g.*, Opp. at 1, 5.) But those objections seek a level of proof that courts evaluating online assent do not require. Indeed, *Smith* squarely rejected the same objection Plaintiff raises here. There, the defendant established formation through declaration testimony describing the website's process for accessing online records and showing that the plaintiff had indeed accessed the website. 2026 WL 622116, at *5. The plaintiff argued that the showing was deficient because the defendant failed to produce "actual screenshots of [the plaintiff's] interactions," IP logs, and confirmation emails. *Id.* at *6. The court, however, found "no authority requiring" such

evidence. *Id.* Likewise, the court in *Houtchens* found assent based on testimony describing the account-creation process and screenshots that were merely "substantially similar" to those presented to users when they created accounts. 649 F. Supp. 3d at 939, 943. Redfin's showing is materially the same. The Nemenman Declaration described the relevant sign-up and login process, the notice presented to users, and the conduct required to manifest assent. (Nemenman Decl. ¶¶ 7–10.)

Nor do Plaintiff's cited authorities undermine that conclusion. (*See* Opp. at 4–5, 8.) *Ruiz*, *Fabian*, and *Gamboa* involved challenges to electronic signatures, namely whether the person opposing arbitration had in fact electronically executed the agreement at issue. The problem in those cases thus was not the absence of IP logs, browser data, device identifiers, or other metadata. It was the absence of sufficient evidence tying the purported assent to the opposing party. Here, by contrast, Redfin identified an account associated with Plaintiff's name and identifying information, established account-creation and account-activity dates, and described the process through which users agreed to the Terms. Moreover, unlike the plaintiffs in his cited cases, Plaintiff has offered no evidence at all.

At bottom, the issue is not whether Redfin can reconstruct every aspect of Plaintiff's exact sign-up or login flow, but instead whether Redfin has submitted evidence establishing notice and assent by a preponderance of the evidence. For the reasons discussed above—and as *Smith*, *Houtchens*, and *Harris* confirm—Redfin has carried its burden. Plaintiff offers no evidence disputing Redfin's showing. Courts regularly find online assent based on account records, declaration testimony describing the relevant user flow, and representative screenshots or descriptions of the notice presented to users, as was presented here.

### B. Plaintiff fails to create a genuine dispute because he offers no evidence and relies only on speculation.

Because Redfin has met its burden to establish contract formation by a preponderance of the evidence, the burden shifts to Plaintiff to identify evidence creating a genuine dispute regarding the existence of the arbitration agreement. *See Smith*, 2026 WL 622116, at *4 (applying summary-judgment framework to formation issues). Plaintiff, however, fails to meet his because he offers no evidence at all.

Most notably, Plaintiff submits no evidence, or even facts, disputing Redfin's evidence. There is no declaration from Plaintiff. He does not deny that the account belongs to him, that he created or used it, that it was associated with his email username, telephone number, and location information, or that he encountered Redfin's account-registration and login process. Plaintiff is in the best position to dispute those facts if they are untrue. If Plaintiff contends that the account belonged to someone else, that he never created or used it, or that he never encountered the sign-up and login flow described by Ms. Nemenman, he could have submitted testimony saying so. But he did not. Courts routinely find that plaintiffs fail to carry their burden under these circumstances. *See Gonzales v. Charter Commc'ns, LLC*, 497 F. Supp. 3d 844, 851 (C.D. Cal. 2020) (finding that plaintiffs failed to carry their burden where none submitted a declaration in opposition to arbitration).

Nor can Plaintiff create a genuine dispute by insisting that Redfin should have produced additional technical evidence. Once Redfin met its burden, Plaintiff was required to identify evidence contradicting Redfin's showing as to formation based on account creation and sign-in. *See Smith*, 2026 WL 622116, at *6 (finding no genuine dispute where plaintiff did "not actually dispute" engaging in conduct requiring agreement to the Terms of Use); *Driskill v. Experian Info. Sols., Inc.*, 753 F. Supp. 3d 839, 845 (N.D. Cal. 2024) ("Here, the CreditWorks sign up screen makes the assent-manifesting actions – creating an account and acceptance of the Terms of Use – clear, and clicking the 'Create Your Account' button is the way to complete that action. [The plaintiff] does not refute this issue. Accordingly, there is no reasonable dispute that [the plaintiff] assented to the Terms of Use."). Yet Plaintiff offers nothing to contest Redfin's showing that users receive notice of the Terms and assent by creating or accessing an account.

Plaintiff's failure to submit any evidence in support of his Opposition is fatal to his position. Instead of identifying evidence contradicting Redfin's showing, Plaintiff argues only that Redfin should have produced different or additional evidence. But that is not evidence, and it is not enough to create a genuine dispute regarding contract formation. Accordingly, there is no genuine dispute regarding the existence of the arbitration agreement.

**C. Plaintiff's remaining browsewrap, cookie banner, and timing arguments do not preclude a finding of assent based on account formation and use.**

Plaintiff's remaining arguments attack theories of assent that Redfin does not invoke. Specifically, Plaintiff argues at length that passive browsing is insufficient to create a contract, that cookie-banner interactions do not constitute assent, and that Redfin failed to prove the precise version of various website materials that governed his March 2026 visit. (Opp. at 5–10.) But Redfin's Motion does not rely on passive browsing or cookie-banner interactions. It rests on Plaintiff's assent through account creation and subsequent account access. Accordingly, Plaintiff's remaining arguments do not undermine the basis on which Redfin seeks to establish contract formation.

Plaintiff devotes substantial attention to Redfin's cookie banner, arguing that it constitutes "classic browsewrap territory" because it states that users agree to the Terms "[b]y using our site" and does not require an assent-specific click. (Opp. at 6–8.) But Redfin does not rely on its cookie banner to establish contract formation here. Indeed, the Motion does not contend that Plaintiff agreed to arbitrate merely by visiting the website, continuing to browse after viewing a banner, or interacting with cookie settings. Instead, Redfin relies on the account-registration and sign-in flows described in the Nemenman Declaration. Users creating a new account or accessing an existing account are advised that "[b]y signing in you agree to Redfin's Terms of Use and Privacy Policy" before proceeding. (Nemenman Decl. ¶¶ 8–10.) The conspicuous banner simply bolsters the repeated notices that Plaintiff received of the Redfin Terms, to which he already assented. Plaintiff's browsewrap authorities therefore do not address the assent mechanism on which the Motion is based.

Redfin's Privacy Policy does not support Plaintiff's formation challenge either. Plaintiff points to language stating that Redfin may create accounts in certain circumstances and that the Privacy Policy distinguishes between "All Users" and "Registered Users." (Opp. at 5, 10.) But neither point undermines Redfin's formation showing. The relevant question is whether Plaintiff assented to the Terms. Redfin's evidence establishes that users agreed to the Terms through the account-registration and sign-in process. Nothing in the Privacy Policy calls that evidence into question. Moreover,

Plaintiff never denies that he is the accountholder identified in Redfin's records, that he created the account, or that he later accessed it.

Finally, Plaintiff's timing and version-control arguments fare no better. Plaintiff repeatedly emphasizes that this action concerns his purported website activity in March 2026, while Redfin relies on evidence concerning his September 2025 account creation and screenshots that are "substantially similar or the same" as the relevant sign-up and sign-in flows. (Opp. at 1–2, 7, 9–10; Nemenman Decl. ¶ 11.) But the relevant question for formation is when Plaintiff agreed to the Terms of Use, not when his claims accrued. Redfin's evidence shows that Plaintiff assented to the Terms when he created and later accessed his Redfin account. (Nemenman Decl. ¶¶ 8–13.) In March 2026, Plaintiff was a pre-existing accountholder that had already consented to Redfin's terms. In other words, Redfin has shown that Plaintiff had already agreed to Redfin's Terms of Use prior to his challenged usage of the website,. He cannot disclaim formation of the existing agreement to arbitrate with Plaintiff covering any disputes arising from the use of Redfin.com, which is the conduct alleged to have happened in March 2026, simply because a few months may have passed in between visits. The fact that Plaintiff's claims arise from later website activity does not negate that earlier agreement.[1]

Nor does Plaintiff identify any evidence that the account-registration or sign-in flows materially differed during the relevant period. Instead, he argues that Redfin should have produced additional proof regarding historical versions of the Terms, Privacy Policy, and user interface. (Opp. at 9–10.) But Plaintiff identifies no evidence that he encountered different terms, a different interface, or a different assent mechanism. His complaint is therefore not that the relevant versions were different, but that Redfin should have submitted more evidence concerning them. That is insufficient to create a genuine dispute. See *Oberstein*, 60 F.4th at 518.

---

[1] His argument is also undermined by the existence of an identical arbitration agreement in the website Terms at the time of his visit in March 2026. Plaintiff cannot contend otherwise. There remains an arbitration agreement requiring AAA arbitration of any dispute in the Redfin Terms of Use published on September 29, 2025, and in place in March 2026 when he supposedly visited the website as a Redfin accountholder. *See* https://www.redfin.com/about/terms-of-use.

Ultimately, these arguments do not address the formation theory on which Redfin's Motion is based. Redfin relies on assent through account creation and account access. Plaintiff offers no evidence disputing either, and there is no basis to preclude enforcement of the arbitration agreement.

**D. Plaintiff is not entitled to formation discovery or a summary trial.**

The Court should deny Plaintiff's requests for formation discovery or a summary trial. Both require a genuine factual dispute regarding contract formation, and, for reasons explained above, Plaintiff has failed to identify one.

Plaintiff is not entitled to discovery regarding contract formation. The FAA permits limited discovery only when "the making of the arbitration agreement" is genuinely in issue. Courts therefore deny formation discovery where the existing record permits resolution of the formation question and the party opposing arbitration has failed to come forward with evidence creating a genuine factual dispute. *See Driskill*, 753 F. Supp. 3d at 848–49.

*Ghazizadeh v. Coursera, Inc.*, 737 F. Supp. 3d 911 (N.D. Cal. 2024), is particularly instructive because the plaintiff sought substantially the same type of discovery Plaintiff seeks here. There, the plaintiff requested discovery concerning the website flow, full-page screenshots, records regarding notice, and other information relating to online contract formation. *Id.* at 936–37. The court denied the request, concluding that the proposed discovery would not provide information useful to the formation analysis because the existing record already permitted resolution of the issue. *Id.* As in *Ghazizadeh*, Plaintiff identifies no evidence suggesting that Redfin's formation evidence is inaccurate, incomplete in any material respect, or otherwise insufficient to permit the Court to resolve formation. *See Oberstein*, 60 F.4th at 518 (rejecting challenge based on allegedly "incomplete excerpts" where the undisputed record established notice and assent).

The same deficiency forecloses a summary trial. Under Section 4 of the FAA, a trial is required only when "the making of the arbitration agreement" is genuinely in dispute. 9 U.S.C. § 4; *Tabas v. MoviePass, Inc.*, 401 F. Supp. 3d 928, 937 (N.D. Cal. 2019) ("[T]he court finds that Plaintiffs manifested consent to the terms of the TOU when they each signed up for the MoviePass service. Since Plaintiffs have not identified any disputed facts regarding contract formation, their request for a

limited trial on this issue is denied."). Plaintiff has failed to identify any disputed fact concerning contract formation, so no trial is warranted and the Court can decide contract formation as a matter of law.

Accordingly, Plaintiff is entitled to neither formation discovery nor a summary trial.

### E. Plaintiff cannot avoid arbitration by "preserving" unbriefed objections to delegation, scope, or enforceability.

Plaintiff's final fallback is to state that, if the Court finds formation, he "preserves" challenges to various aspects of the arbitration agreement, including delegation, AAA incorporation, scope, enforceability, class-waiver operation, unilateral-amendment language, fee provisions, sanctions provisions, public-injunctive-relief issues, unconscionability, and other defenses. (Opp. at 11–12.) But a party cannot avoid forfeiture by listing potential objections and reserving them for another day. If Plaintiff wished the Court to consider those arguments, he was required to develop them in his Opposition. Instead, Plaintiff elected to litigate formation and merely appended a generic reservation of rights as to everything else. While Plaintiff nominally "preserves" a challenge to delegation, he offers no substantive argument explaining why the delegation provision is invalid or unenforceable.

The Terms provide that the arbitrator has exclusive authority to resolve disputes concerning interpretation, applicability, enforceability, and scope, and they separately incorporate the AAA Consumer Arbitration Rules. Under settled law, those provisions constitute clear and unmistakable delegation to the AAA of any remaining disputes concerning arbitrability. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *3 (N.D. Cal. Oct. 11, 2017). Once the Court determines that Plaintiff assented to the Terms, the Court's formation inquiry is complete, and the delegation provision governs unless Plaintiff establishes a basis for refusing to enforce it. Plaintiff has not done so. He argues only that formation comes first. Redfin agrees. But he offers no developed argument explaining why, after formation is established, the Court should disregard the delegation provision and decide issues assigned to the arbitrator.

Plaintiff's "preservation" section does not cure that failure. Courts routinely hold that issues raised only in passing, unsupported by meaningful analysis, or asserted as bare conclusions are forfeited. *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We will not manufacture arguments for an appellant, and a bare assertion does not preserve a claim."); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003); *Young v. ByteDance Inc.*, 700 F. Supp. 3d 808, 814–15 (N.D. Cal. 2023) (finding unconscionability challenge forfeited where the plaintiff identified the issue but failed to support it with meaningful analysis or authority). Plaintiff's Opposition identifies a number of theories—including a challenge to delegation—but does not support any of them with meaningful analysis. Those undeveloped objections are forfeited, and they provide no basis for the Court to disregard the delegation provision once formation is established.

Accordingly, if the Court concludes that Plaintiff agreed to Redfin's Terms, any remaining disputes concerning arbitrability, scope, enforceability, or application of the arbitration agreement must be decided by the arbitrator.

## III. CONCLUSION

Based on the foregoing and Redfin's arguments set forth in the Motion, the Court should compel arbitration of Plaintiff's claims and stay this case pending arbitration.

Dated: July 13, 2026

RACHEL E. K. LOWE
GILLIAN H. CLOW
TRACY YAO
OMAR MORQUECHO
Alston & Bird LLP

By: ______________________
Rachel E. K. Lowe
Attorneys for Defendant Redfin Corporation