United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAM CACAS,

Plaintiff,

v.

REDFIN CORPORATION,

Defendant.

Case No. 26-cv-04566-MMC

**ORDER GRANTING MOTION TO COMPEL ARBITRATION**

Before the Court is defendant Redfin Corporation's ("Redfin") "Motion to Compel Arbitration," filed June 22, 2026. Plaintiff Sam Cacas ("Cacas") has filed opposition, to which defendant has replied. The Court, having read and considered the papers filed in support of and in opposition to the motion, hereby rules as follows.[1]

**BACKGROUND**

Cacas alleges Redfin "owns and operates a website," namely, www.redfin.com, that features property listings (see Doc. No. 1-1 ("Complaint") ¶ 1) and "[w]hen users visit the [w]ebsite, [Redfin] causes numerous trackers and cookies…to be installed on [w]ebsite visitors' internet browsers" (see id. ¶ 2), which trackers "[Redfin] then uses…to collect [w]ebsite visitors' identifying information, as well as dozens of other data points that reveal the users' behavior and activity on the [w]ebsite, subjecting the user to unwanted and intrusive communications by would-be advertisers" (see id.). Cacas, a resident of Oakland, California (see id. ¶ 6), alleges he "visited [Redfin's] [w]ebsite in and around March 2026 to look at property" (see id. ¶ 90).

[1] By prior order, the Court took the matter under submission. (See Doc. No. 9.)

Based on the above allegations, Cacas asserts, on behalf of himself and a putative class, claims for violation of the (1) California Invasion of Privacy Act, California Penal Code § 630 (see Complaint ¶¶ 107-119); (2) Wiretap Act, 18 U.S.C. § 2510 (see id. ¶¶ 120-131); (3) California Computer Data Access and Fraud Act, California Penal Code § 502 (see id. ¶¶ 132-152); (4) Invasion of Privacy, Article 1, § 1, California Constitution (see id. ¶¶ 153-162); and (5) California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200, et seq. (see id. ¶¶ 163-168).

**DISCUSSION**

By the instant motion, defendant "move[s] to compel the claims of [p]laintiff…to individual arbitration and to stay this action pending the outcome of arbitration." (See Doc. No. 11 ("Mot.") at 1:5-7.)

Pursuant to the Federal Arbitration Act ("FAA"), contractual arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." See 9 U.S.C. § 2. "By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." See Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, a district court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts," the court must "enforce the arbitration agreement in accordance with its terms." Id.

**I. Existence of Arbitration Agreement**

"[T]he party seeking to compel arbitration…bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." See Johnson v. Walmart Inc., 57 F.4th 677, 681 (9th Cir. 2023). Here, Redfin relies on an arbitration clause contained in Redfin's "Terms of Use," which clause provides in relevant

part: "[Y]ou and the Redfin Companies agree that any Claim between you and any Redfin Company or Redfin Companies will be resolved **solely by binding, individual arbitration and not in a class, representative or consolidated action or proceeding**." (See Doc. No. 11-2 at 16) (emphasis in original). Redfin contends Cacas, "as a Redfin accountholder, agreed to individual arbitration pursuant to the Redfin Terms of Use." (See Mot. at 1:8-10.)

In determining whether an arbitration agreement was formed, "federal courts apply ordinary state-law principles that govern the formation of contracts." See Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175 (9th Cir. 2014) (internal quotation and citation omitted). "To form a contract under California law, there must be actual or constructive notice of the agreement and the parties must manifest mutual assent." Keebaugh v. Warner Bros. Entertainment Inc., 100 F.4th 1005, 1013-14 (9th Cir. 2024) (internal quotation and citation omitted). The "elemental principles of contract formation apply with equal force to contracts formed online." See Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 855-56 (9th Cir. 2022). "Unless the website operator can show that a consumer has actual knowledge of the agreement," however, "an enforceable contract will be found based on an inquiry notice theory only if: (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." See id. at 856.

Here, Redfin contends Cacas "affirmatively consented to Redfin's Terms of Use and the included arbitration agreement…at the time of account creation" on September 14, 2025 (see Mot. at 1:22-24), as well as by "sign[ing] in to [his] account" on September 15, 2025 (see id. at 2:17-20). In response, Cacas asserts he lacked "reasonably conspicuous notice of the terms" (see Opp. at 1:9-10), and that Redfin has "not prove[d] [he] ever clicked any button tied to assent" (see id. at 1:25-26). The Court considers each of Cacas' arguments, in turn.

"To be conspicuous, notice must be displayed in a font size and format such that

United States District Court
Northern District of California

the court can fairly assume that a reasonably prudent Internet user would have seen it." See Keebaugh, 100 F.4th at 1014 (internal quotation and citation omitted). "While terms may be disclosed through hyperlinks, the presence of a hyperlink must be readily apparent." Id. (internal quotation and citation omitted; alteration in original).

In support of its motion, Redfin has submitted undisputed evidence that, "since prior to September 2025," all "[v]isitors to redfin.com must click on [a] 'Join / Sign in' button…if they wish to either create a new account or log in to an existing one" (see Doc. No. 11-1 ("Nemenman Decl.") ¶¶ 7, 11), and that "[c]licking on the 'Join / Sign in' button leads to [a] pop-up" window whereby users are presented with the option to click on one of three "Continue" buttons (see id. ¶ 8),[2] directly under which the following text is displayed: "By signing in you agree to Redfin's Terms of Use and Privacy Policy" (see id. Figure 3), with "Terms of Use" and "Privacy Policy" both being hyperlinks. When the pop-up window is open, the rest of the webpage is blurred (see id. ¶ 8), and the hyperlinks to the Terms of Use and Privacy Policy, as opposed to the rest of the sentence in which those links appear, are in blue, bolded text, which text contrasts with the white background of the pop-up window such that a user would not "be required to hover their mouse over otherwise plain-looking text or aimlessly click on words on a page in an effort to ferret out hyperlinks," see Berman, 30 F.4th at 857 (internal quotation and citation omitted).

Under such circumstances, the Court finds Redfin's textual notice disclosing the existence of its Terms of Use and the hyperlink to those Terms of Use are reasonably conspicuous. See, e.g., Dohrmann v. Intuit, Inc., 823 Fed. App'x 482, 484 (9th Cir. 2020) (finding contract was formed where terms-of-use hyperlink was "located directly below the sign-in button" and where "sign-in page was relatively uncluttered"); Houtchens v. Google LLC, 649 F.Supp.3d 933, 941 (N.D. Cal. 2023) (finding notice "reasonably

---

[2] The three buttons are "Continue with email," "Continue with Google," and "Continue with Apple." (See Nemenman Decl. ¶ 8 Figure 3.)

conspicuous"; noting "hyperlinks to [defendant's] Terms of Service are presented in blue text in a sentence that otherwise uses gray text…and the screens on which they appear are uncluttered") (internal quotation and citation omitted).[3]

Next, Cacas argues, even assuming the above sign-in page provides users of Redfin's website with reasonably conspicuous notice of the Terms of Use, Redfin fails "to prove that [he] was the person who clicked one of [the sign-in] buttons" at the time of the asserted account creation and sign-in. (See Opp. at 8:20-22.)

Redfin, however, has offered evidence, uncontradicted by Cacas, that a search of its business records reflects "a Redfin account registered in the name of 'S Cacas,' created on September 14, 2025," which "account has a phone number with a 415 area code," i.e., "a number in the San Francisco Bay Area,"[4] and that "the associated email address includes 'sam' in the username." (See Nemenman Decl. ¶ 12.)

Cacas has not submitted a declaration, or any evidence whatsoever, denying he registered for a Redfin account or otherwise disputing Redfin's evidence. Rather, Cacas asserts, Redfin's evidence "is not enough" because Redfin "does not produce any click log, sign-up log, login audit trail, IP address, device ID, browser data," "session history" (see Opp. at 1:22-23) or "screenshots from [his] actual session…[or] actual device" showing he registered for a Redfin account on September 14, 2025 (see id. at 3:6-7).

---

[3] Although not raised by Cacas, the Court notes that, within Redfin's Terms of Use, the arbitration clause itself is conspicuous, in that it covers several pages, with each separate provision thereof set forth in a separately numbered paragraph, the first of which, as noted above, containing prominently bolded text. Additionally, on the first page of the Terms of Use, there is an alert, set out in bolded, all capital letters as follows: "**WHEN YOU AGREE TO THIS AGREEMENT AND THESE TERMS YOU ARE AGREEING (WITH LIMITED EXCEPTION) TO RESOLVE ANY CLAIM BETWEEN YOU AND A REDFIN COMPANY THROUGH BINDING, INDIVIDUAL ARBITRATION RATHER THAN IN COURT**." (See Doc. No. 11-2 at 2) (emphasis in original); see also Kilgore v. KeyBank, Nat. Ass'n, 673 F.3d 947, 964 (9th Cir. 2012) (reversing denial of motion to compel arbitration; holding arbitration agreement enforceable where it was "not buried within the document" and was "conspicuous and appear[ed] in its own section of the [contract]").

[4] Redfin points out that Cacas, according to the allegations in his Complaint, is a resident of the Bay Area. (See Complaint ¶ 6.)

United States District Court
Northern District of California

Cacas cites no authority suggesting Redfin is required to produce such evidence, and, indeed, the authority reviewed by the Court holds to the contrary. See, e.g., Smith v. Inflection Risk Solutions, LLC, 2026 WL 622116, at *6 (N.D. Cal. March 5, 2026) (granting motion to compel arbitration; noting plaintiff "points to no authority requiring [defendant] to produce…items" such as "actual screenshots of [plaintiff's] interactions with [defendant], IP logs, or confirmation emails" to establish formation of arbitration agreement); Maus v. Hyundai Motor America, 2026 WL 974512, at *3 (N.D. Cal. April 10, 2026) (granting motion to compel arbitration where plaintiff "[did] not introduce *any* competing evidence or even directly deny that he completed the [account] enrollment form") (emphasis in original); Bryant v. JPMorgan Chase Bank, N.A., 763 F.Supp.3d 946, 950 (C.D. Cal. 2025) (granting motion to compel arbitration where "[p]laintiff [did] not assert that he did not sign up for [account]" and "ha[d] not provided a sworn affidavit contesting any aspect of [defendant's] affidavit").[5]

Given Redfin's undisputed evidence as to the creation of an account with information substantially matching plaintiff's first and last name and geographic region, as well as Cacas' failure to dispute Redfin's evidence, the Court finds Redfin has carried its burden of proving Cacas' agreement to arbitrate.

## II. Scope of Agreement

The agreement here contains a delegation clause, written in broad terms, that provides as follows: "The parties agree that the arbitrator shall have exclusive authority to decide all issues relating to the interpretation, applicability, enforceability and scope of this arbitration agreement." (See Doc. No. 11-2 at 14.)

Cacas contends Redfin's "request to send the entire case whole to arbitration is

[5] Cacas cites three cases, namely, Ruiz v. Moss Bros. Auto Grp., Inc., 232 Cal. App. 4th 836 (2014), Fabian v. Renovate Am., Inc., 42 Cal. App. 5th 1062 (2019), and Gamboa v. Ne. Cmty. Clinic, 72 Cal. App. 5th 158 (2021), for the proposition that "California courts routinely reject electronic-assent showings like this." (See Opp. at 5:19-26.) Cacas' reliance thereon is unavailing, as in each of those cases the arbitration agreement required an electronic signature and each of the plaintiffs therein submitted a declaration contesting the authenticity of the signature on which the defendant relied.

United States District Court
Northern District of California

overbroad" because, according to Cacas, the arbitration clause itself "provides that if a party seeks injunctive relief whose primary purpose and effect is to prohibit unlawful acts threatening future injury to the general public, the entitlement and extent of such relief must be litigated in a civil court." (See Opp. at 11:13-20) (internal quotations and citation omitted).

In light of the delegation clause, the Court does not reach this issue. See Henry Schein, Inc. v. Archer and White Sales, Inc., 586 U.S. 63, 68 (2019) (holding "[w]hen the parties' contract delegates the arbitrability question to an arbitrator,…a court possesses no power to decide the arbitrability issue").

**CONCLUSION**

For the reasons stated above, the Court orders as follows:

1. Redfin's Motion to Compel Arbitration is hereby GRANTED.
2. The above-titled action is hereby STAYED pending completion of the arbitration proceedings.
3. The Initial Case Management Conference, currently scheduled for October 30, 2026, is hereby VACATED.

**IT IS SO ORDERED.**

Dated: July 30, 2026

MAXINE M. CHESNEY
United States District Judge